MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2016 ME 182
Docket:       Som-16-219
Argued:       October 27, 2016
Decided:      December 22, 2016

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

IN RE ALEXANDRIA C.

SAUFLEY, C.J.

[¶1]  The mother's parental rights to Alexandria C. were terminated by a judgment of the District Court (Skowhegan, *Benson, J.*) on June 8, 2015, after police discovered that the mother had taken a series of shocking, graphic, and abusive photographs of her daughter, and the mother declined to participate in any way in reunifying with the child.[1]  We affirmed the judgment.  *In re A.C.*, Mem-15-106 (Dec. 22, 2015).  The mother then filed a motion for relief from judgment, alleging the ineffective assistance of counsel.  She now appeals the court's denial of that motion.  Because the mother failed to meet her burden to prove that her trial counsel was ineffective, we affirm the judgment. We take

---

[1]  On June 18, 2014, police executing a search warrant discovered numerous graphic pictures of then-six-year-old Alexandria on the mother's computer.  The mother admitted to having taken the photographs, claiming it was for Alexandria's "protection."  It was necessary to take these photographs, she rationalized, to document Alexandria's physical condition before she went to visit her father in case Alexandria suffered sexual abuse during the visit.  The mother subjected her daughter to between two and four photographic sessions.

2

this opportunity to clarify the emerging process for post-judgment review of judgments terminating parental rights.

## I. BACKGROUND

[¶2]   The petition for termination in this case was unusual in that Alexandria's father is well able to care for her, and she is safely placed with her father where she has made "progress . . . emotionally, mentally, physically, and academically in his care."   Ordinarily, there would be no need to permanently terminate the mother's rights to her child.   Unfortunately, the mother's obsession, since at least May of 2008, "with the belief that the father . . . is a mortal danger to [Alexandria]" has resulted in her unwillingness or inability to allow Alexandria to be raised in peace by her father.   The termination court summarized an extensive history of litigation by the mother in which she alleged abuse by the father in three protection from abuse matters, the parents' divorce, and in post-divorce motions.   The court further noted that there was never a finding of abuse in any of these matters.

[¶3]   We affirmed the termination of the mother's parental rights because, as the guardian ad litem recognized, the mother's litigiousness would in all likelihood lead her immediately "back to court attempting to amend [any] parental rights and responsibilities order."   Her litigious approach to the

ancillary family matter proceedings, along with her obstinate unwillingness to participate in any services designed to allow her to normalize her relationship with her daughter, necessitated the unusual action by the Department of Health and Human Services seeking to have her parental rights permanently terminated.

[¶4]  The child protective proceeding originated when the police discovered the mother's graphic photographs of Alexandria.  The court granted a preliminary child protection order on the same day.  When the mother contested the preliminary order two weeks later, the court (*Fowle, J.*) found that Alexandria was at immediate risk of serious harm and granted custody of Alexandria to her father.  After a hearing in which the court made a finding of jeopardy as to the mother, including an aggravating factor, the Department filed a petition to terminate the mother's parental rights.

[¶5]  The court (*Benson, J.*) then held a hearing on the termination petition and considered the testimony of the mother and the Department caseworker, reports of a GAL, and orders that were entered in prior family and protection from abuse matters.  The court found that the mother "has not gained any appreciation for the gravity and the harm" caused by her "outrageous and disgusting conduct," and that she remained a "considerable

and significant threat" to Alexandria. Further finding that termination was in Alexandria's best interest, the court entered a judgment terminating the mother's parental rights.

[¶6] The mother appealed, arguing that there was insufficient evidence to support the court's findings. *See In re A.C.*, Mem 15-106 (Dec. 22, 2015). We affirmed the court's judgment terminating the mother's parental rights on December 22, 2015. *Id.* While the mother's appeal was pending, on October 29, 2015, we published an opinion in a different child protection proceeding in which we announced the procedural requirements and standards that apply to claims of ineffective assistance of counsel in cases for termination of parental rights. *In re M.P.*, 2015 ME 138, 126 A.3d 718.

[¶7] Relying on the process announced in that case, on January 8, 2016, seventeen days after we affirmed the judgment terminating her parental rights, the mother filed a motion for relief from judgment. *See* M.R. Civ. P. 60(b). She argued that her trial counsel had rendered ineffective assistance. She did not file the required sworn affidavit identifying the basis for her claim. *See In re M.P.*, 2015 ME 138, ¶ 21, 126 A.3d 718.

[¶8] Despite the missing affidavit and the questions regarding timing, the court acted cautiously and allowed the mother to proceed promptly to

hearing to challenge her counsel's representation. The mother and her former attorney testified at the hearing. At the conclusion of the hearing, the court recited the following factual findings from the bench, which are supported by record evidence. During the termination proceeding, the mother was rigid and unwilling to consider any resolution that would allow contact between Alexandria and the father. The mother threw "roadblocks" in the way of meeting with her attorney, would not provide releases for her attorney to meet with her medical providers, and declined to provide witnesses. The mother's trial counsel thoroughly discussed with her the option of a potential agreement that would have avoided termination of her parental rights, and fully advised her of the risk and consequences of having her rights terminated.

[¶9] In accordance with its findings, the court ultimately concluded that the mother had not met her burden to prove that her trial counsel provided ineffective assistance, and it denied her motion for relief from judgment on April 29, 2016. This appeal followed.

## II. DISCUSSION

### A. Procedure

[¶10] We begin by emphasizing the critical importance of swift resolution in child protection proceedings to promote stability and

permanence for children who are the subjects of these proceedings. When the Department alleges that a child cannot safely be returned to her parents, the law requires prompt action to "[p]romote the early establishment of permanent plans for the care and custody of children who cannot be returned to their family." 22 M.R.S. § 4003(4) (2015); *see also In re M.P.*, 2015 ME 138, ¶¶ 18-19, 126 A.3d 718. To this end, we have imposed strict procedural requirements on a parent claiming the ineffective assistance of counsel in termination proceedings following the opportunity for a full trial on the merits of the Department's petition for termination of parental rights. *In re M.P.*, 2015 ME 138, ¶¶ 19-21, 126 A.3d 718.

[¶11]  Thus, we have said that ineffectiveness claims in termination proceedings should generally be raised on direct appeal. *See id.* ¶¶ 19-20. We allow an exception, however, where "the record does not illuminate the basis for the challenged acts or omissions" of a parent's attorney. *Id.* ¶ 20. This exception permits no delay. In such cases, "the parent must *promptly* move for relief . . . pursuant to M.R. Civ. P. 60(b)(6) . . . no later than twenty-one days after the expiration of the period for appealing the underlying judgment." *Id.* This timeframe is necessary so that any appeal from the Rule 60(b)(6) ineffective assistance claim can be heard together with the direct appeal and

not unreasonably delay the achievement of a permanent out of home placement for the child, or the swift return to a meaningful reunification effort. *See id.* ¶ 20 & n.4.

[¶12] Accordingly, when a parent presents a claim of ineffective assistance of counsel following a termination proceeding that is not included in the appeal itself, the claim must be made within the time frames established in *In re M.P.* To be specific, any Rule 60(b)(6) motion alleging ineffective assistance of counsel must be made within twenty-one days after the time for taking an appeal has expired. *Id.* ¶ 20. The trial court will dismiss and therefore not act on the merits of an untimely Rule 60(b)(6) motion alleging ineffective assistance of counsel, and no appeal from the trial court's dismissal of an untimely motion will lie. *See* 22 M.R.S. § 4006 (2015).

[¶13] We stress these time requirements because we are acutely aware of the challenges presented in rapidly assessing the situation regarding representation, which must be weighed against the competing need for finality for the children involved. It will be critically important for counsel to be attentive to these deadlines at the conclusion of termination proceedings.

[¶14] In the matter before us, because *In re M.P.* was certified months after the order terminating the mother's parental rights was docketed, and

8

because the motion was filed within seventeen days after the decision affirming the order of termination against the mother, we accept the mother's Rule 60(b)(6) motion as timely filed. *See In re M.P.*, 2015 ME 138, ¶ 28, 126 A.3d 718.

[¶15]   In addition to the strict temporal limitations on Rule 60(b)(6) motions, "the parent making the claim must submit a signed and sworn affidavit stating, with specificity, the basis for the claim." *Id.* ¶ 21. "Because of the counter-balancing interests of the State in ensuring stability and prompt finality for the child, if the parent fails to comply with this procedure, the parent's motion . . . must be denied." *Id.*; *see also In re Aliyah M.*, 2016 ME 106, ¶ 9, 144 A.3d 50.

[¶16]  When a parent pursues a claim of ineffective assistance by means of a Rule 60(b)(6) motion, the parent's affidavit and any accompanying affidavits must explicitly address the two parts of the standard for ineffective assistance of counsel. *See In re M.P.*, 2015 ME 138, ¶¶ 21, 27, 126 A.3d 718. The affidavit must demonstrate that there was admissible, material, and noncumulative evidence that counsel was aware of and did not offer to the trial court, or that the parent's counsel was deficient for some other very substantial reason. *See id.*   The affidavit must also demonstrate that the

alleged deficiency resulted in prejudice—meaning that there was a reasonable probability that it could have made a difference to the outcome of the proceeding. *See id.*; *Theriault v. State*, 2015 ME 137, ¶ 19, 125 A.3d 1163. Although affidavits of other witnesses will be helpful in this context, we again stress that an affidavit from the parent, setting forth, among other things, the parent's efforts to advise trial counsel of the availability of such witnesses or evidence, must be filed with the motion.

[¶17]  Because here the mother filed no signed and sworn affidavit with her Rule 60(b)(6) motion, the court could simply have denied the mother's motion for failure to adhere to the required procedure. *See In re M.P.*, 2015 ME 138, ¶ 21, 126 A.3d 718.  In future cases, this requirement must be strictly enforced.  However, again, because of the unique procedural posture of this case, in an exercise of caution, the court held an evidentiary hearing on the mother's motion, and we turn to the merits of the mother's appeal on her claim of ineffective assistance of counsel.

B.    Ineffective Assistance of Counsel

[¶18]  When a parent raises a claim of ineffective assistance of counsel in a child protection case, it is the parent's burden to show that "(1) counsel's performance was deficient, i.e., that there has been serious incompetency,

inefficiency, or inattention of counsel amounting to performance . . . below what might be expected from an ordinary fallible attorney"; and (2) the deficient performance prejudiced the parent's interests at stake in the termination proceeding to the extent "that the trial cannot be relied on as having produced a just result." *Id.* ¶ 27 (quotation marks omitted) (citation omitted).

[¶19]  We review the factual findings underlying ineffectiveness claims for clear error.  *See Roberts v. State*, 2014 ME 125, ¶ 23, 103 A.3d 1031. Because the parent alleging counsel's ineffectiveness had the burden of proof, on appeal the parent must demonstrate that a contrary finding is compelled by the evidence.  *See Dickens v. Boddy*, 2015 ME 81, ¶ 12, 119 A.3d 722; *Heon v. State*, 2007 ME 131, ¶ 8, 931 A.2d 1068.  The trial court's ultimate denial of a Rule 60(b) motion is reviewed for an abuse of discretion.  *Town of Wiscasset v. Mason Station, LLC*, 2015 ME 59, ¶ 6, 116 A.3d 458.

[¶20]  In the matter before us, there was ample evidence to support the court's finding that the mother's attorney performed at and above the level that would be expected from an ordinary, fallible attorney.  The court found, with evidentiary support, that the attorney informed the mother of her options and the associated risks, and assisted her with tactical decisions.

Indeed, before us, the mother does not suggest that she proposed to counsel other evidence that counsel should have presented to the court. At the hearing on the Rule 60(b)(6) motion, when asked what other evidence existed, the mother responded, "There was no additional evidence." Thus, the court was not compelled to find that the performance of the mother's counsel was deficient.

[¶21] Even if counsel's performance had been deficient, the court was not compelled to find that the mother's case was prejudiced by her attorney's performance. The mother provided no additional evidence that would have created a reasonable probability of the termination hearing resulting in a different outcome, and she specifically testified that there was no such evidence. The mother's paranoid obsession that the father is a danger both to Alexandria and to herself caused the mother to do great harm to her daughter—harm that she still refuses to acknowledge. The same paranoia caused the mother to refuse to consider *any* resolution that would have allowed contact between Alexandria and her father, even if it would have avoided the termination of her own parental rights.

[¶22] The mother's intransigence would have eviscerated most attorneys' abilities to provide successful representation. Sadly, she

completely failed to assist her own attorney by providing witnesses and evidence. In addition, the Department caseworker testified at the termination hearing that after the caseworker recommended reunification services, she was unable to contact the mother again except to arrange service of the termination petition. The GAL's report similarly indicated that the mother never responded to the GAL's offers to meet with her. Even in court at the termination hearing, the mother refused to answer questions about where she lived or to provide the names of her alleged service providers. We are accordingly unpersuaded by the mother's argument that the court was compelled to find that her lawyer provided ineffective assistance, and we discern no injustice in the court's order denying her Rule 60(b)(6) motion and establishing permanency for Alexandria. The court did not abuse its discretion in denying the mother's Rule 60(b)(6) motion.

## III. CONCLUSION

[¶23] In order to assure that a parent may be heard on a claim of ineffective assistance of counsel in a termination proceeding, and to promote swift action to provide permanency and stable families for children who have been tangled in the child protection system, we have announced a procedure

intended to balance the important interests at stake.  A post-termination claim of ineffective assistance of counsel must be

(1)    included in any appeal from the order of termination; or
(2)    addressed through a Rule 60(b)(6) motion that must be
  a. filed no later than 21 days after the running of the time for an appeal, and
  b. accompanied by the parent's signed and sworn affidavit setting forth the facts upon which an ineffective assistance of counsel determination could be made.

[¶24]  In the matter before us, the court held a hearing, provided the mother with an opportunity to be heard on her Rule 60(b)(6) motion, and concluded that the mother had failed to meet her burden.  The court did not err in reaching that conclusion.

The entry is:

Judgment affirmed.

---

Verne E. Paradie, Jr., Esq. (orally), Paradie, Sherman, Walker & Worden, Lewiston, for appellant mother

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Skowhegan District Court docket number PC-2014-40
FOR CLERK REFERENCE ONLY