MAINE SUPREME JUDICIAL COURT                      Reporter of Decisions
Decision:     2017 ME 214
Docket:       Yor-17-197
Submitted
  On Briefs:  October 24, 2017
Decided:      November 9, 2017

Panel:        SAUFLEY, C.J., and MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

IN RE RYAN G.


PER CURIAM

[¶1]  The mother and father of Ryan G. appeal from a judgment of the District Court (Biddeford, *Foster, J.*) terminating their parental rights to Ryan G. pursuant to 22 M.R.S. § 4055(1)(A)(1)(a) and (B)(2)(a), (b)(i), (ii), (iv) (2016).  They challenge the sufficiency of the evidence to support the judgment and the court's discretionary determination of the child's best interest.  The father also contends that his right to counsel was violated and that the court abused its discretion when it denied his motion for amended or additional findings of facts and conclusions of law.[1]  Because the evidence

---

[1]  Although the father attempts to challenge the temporary denial of court appointed legal counsel and the denial of his motion for amended or additional findings of fact and conclusions of law, pursuant to 22 M.R.S. § 4006 those decisions were interlocutory and not appealable, and we will not consider them.  *See* 22 M.R.S. § 4005(2) (2016); 22 M.R.S. § 4006 (2016); *In re L.R.*, 2014 ME 95, ¶ 9, 97 A.3d 602 ("Section 4006 unequivocally provides that in child-protective cases orders other than termination orders, jeopardy orders, or orders authorizing medical treatment are not appealable.  We cannot substitute our judgment for that of the Legislature.") (citations omitted) (quotation marks omitted).  We note, however, that the stripping of counsel from a parent involved in a child protection proceeding should occur rarely, if ever.  At a minimum, the parent's assigned counsel should be permitted to assist his or her client in having a financial screener, employed by

2

supports the court's findings and discretionary determinations, we affirm the judgment.

[¶2] Based on competent evidence in the record, the court found, by clear and convincing evidence, (1) that the parents are unwilling or unable to protect the child from jeopardy and that those circumstances are unlikely to change within a time that is reasonably calculated to meet the child's needs, (2) that they are unwilling or unable to take responsibility for the child within a time that is reasonably calculated to meet the child's needs, (3) that the mother has failed to make a good faith effort to rehabilitate and reunify with the child pursuant to 22 M.R.S. § 4041 (2016), and (4) that termination of their parental rights is in the child's best interest. *See* 22 M.R.S. § 4055; *In re Caleb M.*, 2017 ME 66, ¶ 27, 159 A.3d 345. The court based these determinations on the following findings of fact.

[¶3] In the fall of 2014, the mother and father engaged in a sexual relationship that involved the use of drugs, including crack cocaine. The mother became pregnant and the child was born drug affected due to the mother's continued abuse of drugs up until his birth, including an injection of heroin into her breast three hours before the child's delivery. The

the Maine Commission on Indigent Legal Services, review the parent's financial affidavit before the court takes such an extreme step.

Department of Health and Human Services filed the present action pursuant to the terms of the Child and Family Services and Child Protection Act, 22 M.R.S. §§ 4001-4099-H (2016), and obtained temporary custody of the child. The court's termination order states:

> Reunification efforts with [the mother] have been stymied by her repeated incarcerations over the last year and one half. The caseworker made every attempt to maintain contact with [the mother], including conducting several Family Team Meetings in jail as well as telephone contact when that was available. The reunification services for [the mother] have been consistent throughout the case – mental health and substance abuse treatment, safe and stable housing, and regular visitation. [The mother] has been unable to comply with any of those obligations. She was unable to complete the [Intensive Outpatient Program] at Key3West due to continued abuse of substances. At one point during the case, [the mother] had an intake appointment to attend Crossroads for Women, a residential substance abuse treatment program. . . . However, [she was] unable to find the facility and missed the appointment. [The mother] insisted she had been unable to reschedule another intake.

> Although difficulties with transportation and communication may have complicated the reunification effort, the hard fact is that [the mother's] continued use and repeated incarcerations are the real reasons for her failure in this matter. Even if she is able to re-engage in treatment when released from jail, it will take an extended period of time to address a problem with which [the mother] has struggled for years and to persuade the [c]ourt that she has been truly successful at that endeavor.

[¶4] Three months after the child was born and the Department obtained temporary custody, paternity testing confirmed the father's

4

relationship to the child. After the father's initial rejection of the child, his wife encouraged him to change his position, and he expressed an interest in having contact with the child. In discussing the father, the court stated:

> On one level, [the father] has been extremely cooperative with this process. As the [caseworker] acknowledged, he has expressed a willingness to do almost everything the Department has requested. He went to the initial appointment for an evaluation at Maine Behavioral Health, completed a [Families Affected by Substance Abuse evaluation] at Day One, participated in a daylong appointment for a [Court Ordered Diagnostic Evaluation], and ultimately connected with [a Violence No More counselor] for individual counseling. He has visited faithfully with his son and remained in touch with the Department. . . .

> [The father] and [his wife] have never accepted [the trial court's] findings as outlined in the Jeopardy Order. . . . At trial, [the father] repeatedly rejected the [c]ourt's findings, both in general terms and specific points. He referred to them as "twisted lies and stories."[2] In challenging the positive hair test for cocaine, [the father] insisted there had been no test for that substance and suggested it might have been the Adderall someone gave him at work. He asserted that the caseworker had never mentioned concerns about domestic violence and never asked that he engage in counseling on that subject. He continues to alternately control and ignore his wife, who will be the primary caretaker for [the child]. Throughout the case he has demonstrated an inability to appropriately deal with others with whom he disagrees, most notably the caseworker and the Guardian, often behaving in an aggressive and bullying manner.

> . . . .

---

[2] In the transcript, the father's exact words were "twisted stories and lies."

The issue as to [the father] is the time frame necessary for him to address the jeopardy defined by the Court. At the time of trial he had just begun counseling with [a Violence No More counselor]. Even if he continues to attend on a regular basis, a proposition for which there is some doubt, [the father] has a significant amount of work to do before he alleviates jeopardy. Despite his assertions to the contrary, his wife also has work to do, as she would be responsible for [the child], by herself, for extended periods of time. For a child who has been in foster care essentially since birth, the time required to complete those efforts is not reasonably calculated to meet his needs.

[¶5] The father's wife is diagnosed with bipolar affective disorder, depression, and chronic Post Traumatic Stress Disorder, and has a history of self-injurious and uncontrollable behavior. Although the court acknowledged that neither it nor the Department had any authority to insist that the father's wife engage in services, the court noted:

If a parent's partner is a source of jeopardy to the child, the parent may have to make a difficult election. He may attempt to encourage the partner to correct the behavior that presents a risk of harm, or, if the partner is unwilling, he may have to ensure the partner does not have access to or responsibility for the child. In this case, [the wife], both as an individual and as a partner to [the father], presents jeopardy to [the child] and will be his primary caretaker for extended periods of time. Unless [the wife] alleviates that jeopardy, [the child] would remain at risk even if [the father] addressed the concerns the [c]ourt raised about him.

[¶6] Given these findings and the court's other specific findings of fact that are supported by competent evidence in the record, the court adequately explained how the deficits of the parents render each parent unwilling or

unable to protect the child from jeopardy or take responsibility for the child in time to meet his needs, and adequately explained how the mother failed to make a good faith effort to rehabilitate and reunify with the child. *See In re Thomas D.*, 2004 ME 104, ¶ 21, 854 A.2d 195. The court also found that the father failed to make a good faith effort to rehabilitate and reunify, but this finding was not supported by clear and convincing evidence. "Where the court finds multiple bases for unfitness, we will affirm if any one of the alternative bases is supported by clear and convincing evidence." *In re K.M.*, 2015 ME 79, ¶ 9, 118 A.3d 812 (quotation marks omitted); *see* 22 M.R.S. § 4005(1)(B). The court did not err or abuse its discretion in determining that termination of the parents' parental rights, with a permanency plan of adoption, is in the child's best interest. *In re Thomas H.*, 2005 ME 123, ¶¶ 16-17, 889 A.2d 297.

The entry is:

Judgment affirmed.

Stephen H. Shea, Esq., Fairfiled & Associates, P.A., Portland, for appellant Mother

Alison B. Thompson, Esq., Hanly Law, LLC, Portland, for appellant Father

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Biddeford District Court docket number PC-2015-30
FOR CLERK REFERENCE ONLY