MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2018 ME 71
Docket:       Ken-17-537
Submitted
  On Briefs:  April 25, 2018
Decided:      May 22, 2018

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

## IN RE CHILD OF STEPHEN E.

PER CURIAM

[¶1] Stephen E. appeals from a judgment of the District Court (Waterville, *Mathews, J.*) terminating his parental rights to his child pursuant to 22 M.R.S. § 4055(1)(A)(1)(a) and (B)(2)(a), (b)(i)-(iv) (2017).[1] He raises directly on appeal a claim of ineffective assistance of counsel at the hearing on the petition to terminate his parental rights.[2] The father does not challenge the merits of the court's judgment terminating his parental rights. Because the father failed to present a prima facie case of ineffective assistance of counsel and the record

---

[1] The District Court (Waterville, *Mathews, J.*) also entered a judgment terminating the mother's parental rights. The mother does not appeal from that judgment.

[2] The father also makes an ineffective-assistance-of-counsel claim in his direct appeal of the jeopardy order, alleging that his attorney failed to challenge the court's jurisdiction, pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), 19-A M.R.S. §§ 1731-1783 (2017). We need not reach the father's argument because, even assuming that the claim is cognizable on appeal, the father has failed to make a prima facie showing of ineffectiveness. *See In re Corey T.*, 2018 ME 20, ¶ 4 n.3, 178 A.3d 1238; *see also In re Evelyn A.*, 2017 ME 182, ¶ 19, 169 A.3d 914. Title 22 M.R.S. § 4031(3) (2017) expressly states that the provisions of the UCCJEA "do not apply to child protection proceedings."

2

evidence supports the court's findings and discretionary determinations, we affirm the judgment.

## I. CASE HISTORY

[¶2] In July 2016, the mother of the child relocated from New York to Maine, bringing the child with her.[3] After being notified by New York child protective authorities of an open case in New York and after another child in the mother's home made a plea for help, the Maine Department of Health and Human Services began an investigation. On August 5, 2016, the Department and law enforcement officials placed the child in a six-hour hold, *see* 15 M.R.S. § 3501(1)-(2) (2017), due to safety concerns for the child and the mother's unwillingness to cooperate. The Department then initiated this child protection proceeding. *See* 22 M.R.S. § 4032 (2017). The court (*Dow, J.*) entered a preliminary protection order, placing the child in Department custody. *See* 22 M.R.S. §§ 4034, 4036 (2017).

[¶3] On August 22, 2016, a summary preliminary hearing was held. The court (*E. Walker, J.*) determined that the father, who did not appear but was represented by counsel, had not been provided with sufficient notice. The

---

[3] The Department of Health and Human Services also initiated a child protection proceeding involving another child of the mother, who has a different father and whom the mother also brought to Maine. *In re Emma B.*, 2017 ME 187, ¶ 5 & n.2, 169 A.3d 945.

father did participate telephonically in a case management conference held that same day. *See* M.R. Civ. P. 43(a).

[¶4] The court (*Mathews, J.*) held a contested jeopardy hearing in December 2016 at which the father participated telephonically. By order dated January 19, 2017, the court found jeopardy to the child based on the following facts:

> This family came to the Department's attention when the State of New York notified the Maine Department of Health and Human Services . . . of an open case it had with [the mother]. [The mother] had left New York with [her children] to reside in Maine. [The mother] left New York, in large part to escape from [the father] who had subjected her to domestic violence for several years. . . .
>
> . . . .
>
> [The father] has subjected [the mother] to physical and emotional abuse. The Court finds [the mother's] testimony on the domestic violence very credible. The physical abuse included scratching, biting, cutting, kicking and punching [the mother]. In 2013, [the mother] was hospitalized with four broken ribs, a fat lip and two black eyes from a beating administered by [the father]. In late July 2016 [the father] broke into [the mother's] residence and sexually assaulted her. During this event, both of [the mother's children] were sleeping in her bed. In the middle of the assault [the child] awoke and asked his father . . . why he was hurting his mother. Shortly after this event [the mother] fled New York to Maine with the assistance of a police officer and a domestic violence agency.
>
> . . . .

> [The father] denies that he abused [the mother] despite overwhelming evidence to the contrary. The Court does not find him believable. In his estimation, the only reason [the mother] was able to keep [the children] from going into state custody in New York was because he lived with them. Irrespective of this position, [the father] voluntarily left the home in March 2016. He abandoned [the child] in circumstances he felt were unsafe because he "knew DHHS would catch up with [the mother]." [The father] takes no responsibility for the abuse he perpetrated, the trauma he inflicted on his child and his abdication of his parental role. The Court finds that [the father] has subjected [the child] to treatment heinous and abhorrent to society as contemplated by 22 M.R.S. § 4002(1-B)(A)(1) and has abandoned [the child] as contemplated by 22 M.R.S. § 4002 (1-A)(F).

[¶5] Based on its finding of two aggravating factors—that the father had abandoned the child and that the father had subjected the child to treatment heinous and abhorrent to society—the court relieved the Department of its obligation to pursue reunification efforts with the father. *See* 22 M.R.S. §§ 4002(1-A)(F), (1-B)(A)(1), 4041(2)(A-2)(1) (2017).

[¶6] The Department filed a petition to terminate the father's parental rights on July 24, 2017. The father was served the petition in hand, in New York, on July 31.

[¶7] On September 1, 2017, the court (*E. Walker, J.*) held a case management conference at which the father did not appear. The father's counsel notified the court that his contact with the father had been "minimal at best," that the father had not given him any direction other than a general

request to contest the petition, and that the father had not responded to counsel's email sent almost a month earlier regarding the case management conference. Counsel notified the court that he was considering filing a motion to withdraw. Six days later, counsel filed a motion to withdraw, which was granted by the court (*Mathews, J.*) on September 14.[4] The court's order provided that the father could apply for the assignment of new counsel.

[¶8] On November 8, 2017—one week prior to the hearing on the petition to terminate parental rights—the father filed a letter, which included several attachments, expressing his dissatisfaction with the Department and his former counsel and defending against some of the allegations made against him. In the letter, the father did not include an application for reappointment of counsel, move for a continuance, request that he be permitted to participate telephonically in the forthcoming termination hearing, or make any other arrangements related to the termination hearing.

---

[4] In this case, counsel's motion to withdraw was based on the client's failure to adequately maintain contact with counsel to the extent that representation had become "unreasonably difficult." In child protective cases, where fundamental rights similar to the liberty interests in criminal cases are at stake, an order granting withdrawal should be conditioned on new counsel appearing or the party expressly waiving the right to counsel. *See* M.R.U. Crim. P. 44B ("A court order relieving counsel does not become effective until either new counsel is appointed or has entered an appearance, or the court determines that the defendant has expressly waived the right to counsel, impliedly waived that right by conduct, or forfeited that right."). Immediate withdrawal of counsel could be ordered when actions by a party cause counsel safety or integrity concerns, *see State v. Nisbet*, 2016 ME 36, ¶¶ 12, 18, 27-39, 134 A.3d 840, or counsel's continued representation will cause counsel to be in violation of the Maine Rules of Professional Conduct, *see id.* ¶ 42; M.R. Prof. Conduct 1.16(a)(1) & cmts. (2)-(3).

6

[¶9] On November 15, 2017, the court held a one-day evidentiary hearing on the Department's petition to terminate the father's parental rights. Because the father failed to appear after having been given proper notice of the termination hearing, the hearing was held in his absence. That same day, the court entered a judgment terminating the father's parental rights. The court based its unfitness and best interest determination on the following findings:

> [The father] last had contact with [the child] on 1/5/17 through a phone conversation facilitated by the [Department]. [The father] has not attended court in person. . . . He has not appeared in any capacity since the jeopardy hearing . . . . He has not [had] contact with the Department since 1/9/2017, when he had a phone call [with] the Department and his focus was on [the mother's] ex-boyfriend.
>
> . . . .
>
> [The father] has taken no steps to alleviate jeopardy issues identified in the jeopardy order dated 12/21/16.
>
> . . . .
>
> The child is in need of protection and permanency. Since the parents have failed to make meaningful progress towards reunification in a time reasonably calculated to meet the child's needs and have abandoned the child, the Court finds that evidence supports a finding that termination of parental rights is in [the child's] best interest. The child has resided in a therapeutic foster care home since February 14, 2017. The child has made wonderful gains adjusting to school and the home since the initial placement. He shares a significant bond with his foster care mom, who spends substantial one on one time with the child and works in his school. The child has also formed bonds with the other child in the home

and the foster care father. The child needs a permanency plan which is achievable in a time reasonably calculated to meet his needs. The permanency plan is Adoption . . . .

[¶10] Based on these findings, the court found, by clear and convincing evidence, that the father (1) has abandoned the child, (2) is unwilling or unable to protect the child from jeopardy and that these circumstances are unlikely to change within a time reasonably calculated to meet his needs, (3) is unwilling or unable to take responsibility for the child within a time reasonably calculated to meet the child's needs, and (4) has failed to make a good faith effort to rehabilitate and reunify with the child.[5]  *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(iv). The court also found that termination of the father's parental rights is in the best interest of the child. *See* 22 M.R.S. § 4055(1)(B)(2)(a). The father filed a timely notice of appeal. *See* 22 M.R.S. § 4006 (2017); M.R. App. P. 2A(a), (b)(1), 2B(c)(1).

## II.  LEGAL ANALYSIS

[¶11]  In his appeal, the father asserts a claim that his counsel's withdrawal two months before the termination hearing amounts to ineffective

---

[5] Although the court found that the father has taken no steps to address issues in the reunification plan, the record demonstrates that reunification was ordered only as to the mother and that the court relieved the Department of its obligation to pursue reunification efforts with the father after finding two aggravating factors at the jeopardy hearing. In all other respects, the court's factual findings are fully supported by competent evidence in the record.

8

assistance of counsel because the father was left without representation at the termination hearing and no case was presented on his behalf.[6]

[¶12]  There are two ways in which a parent can raise a claim of ineffective representation in a termination case.  *In re Tyrel L.*, 2017 ME 212, ¶ 7, 172 A.3d 916; *In re M.P.*, 2015 ME 138, ¶ 27, 126 A.3d 718.  "First, if there are no new facts that the parent seeks to offer in support of the claim, the parent may make an ineffectiveness claim in a direct appeal from a termination order." *In re Aliyah M.*, 2016 ME 106, ¶ 6, 144 A.3d 50.  "Second, if the basis for the parent's ineffectiveness challenge is not clear from the existing record and would require a court to consider extrinsic evidence, the parent must *promptly* move for relief from a judgment terminating his or her parental rights pursuant to M.R. Civ. P. 60(b)(6)."  *Id.*  Regardless of how the parent presents the claim, the parent "must execute and file an affidavit stating, with specificity, the basis for the claim."  *Id.* ¶ 7.  Here, the father asserts his claim by taking a direct appeal.

[¶13]  On a direct appeal, "we will review the existing record to determine whether the evidence in that record creates a prima facie showing

---

6  The father filed with his notice of appeal a signed and sworn affidavit stating with specificity the basis for his claim.  *See In re M.P.*, 2015 ME 138, ¶ 21, 126 A.3d 718; *see also In re Aliyah M.*, 2016 ME 106, ¶¶ 7, 10, 144 A.3d 50.

of ineffectiveness." *Id.* ¶ 12. The father bears the burden to demonstrate that "(1) counsel's performance was deficient, i.e., that there has been serious incompetency, inefficiency, or inattention of counsel amounting to performance . . . below what might be expected from an ordinary fallible attorney, and (2) the parent was prejudiced by the attorney's deficient performance in that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *In re M.P.*, 2015 ME 138, ¶ 27, 126 A.3d 718 (citations omitted). The father's contention is deficient in several respects.

[¶14] First, the father asserts that it was improper for counsel to withdraw from his representation by citing numerous rules of professional conduct. To the extent that the father challenges the trial court's original grant of the motion to withdraw and removal of counsel, his argument is not properly presented, and, in any event, is not persuasive. *See* 22 M.R.S. §§ 4005(2), 4006 (2017); *In re Ryan G.*, 2017 ME 214, ¶ 1 n.1, 173 A.3d 142; *In re L.R.*, 2014 ME 95, ¶ 9, 97 A.3d 602 ("Section 4006 unequivocally provides that in child-protective cases orders other than termination orders, jeopardy orders, or orders authorizing medical treatment 'are not appealable.'").

[¶15]   Second, the father has not demonstrated that counsel's *performance* at the termination hearing was *deficient* where counsel had withdrawn months earlier with leave of the court.  Indeed, the father's brief asserts that "[i]t is impossible to know what would have occurred, had trial counsel not withdrawn from representation."  A prerequisite to establishing that counsel's performance was "below what might be expected from an ordinary fallible attorney" is that counsel was a participant in the proceeding.

[¶16]   To the extent that the father argues that counsel's act of withdrawing from the representation of a client who had abandoned communication and contact with counsel well in advance of trial constitutes a deficient performance, his argument, without more, is not persuasive.  *Cf. In re Frederick P.*, 2001 ME 138, ¶¶ 9-11, 779 A.2d 957; *State v. McLaughlin*, 567 A.2d 82, 83 (Me. 1989).  *But cf. In re Ryan G.*, 2017 ME 214, ¶ 1 n.1, 173 A.3d 142 (cautioning against the removal of counsel from a parent involved in a child protection proceeding).

[¶17]   Third, the father claims that he was prejudiced by counsel's withdrawal because—without counsel—he was deprived of the opportunity to testify on his own behalf, present witnesses, and cross-examine the

Department's witnesses.[7] Contrary to the father's contention, the father could have participated in the termination hearing without the aid of counsel. *Cf. In re T.B.*, 2013 ME 49, ¶ 15, 65 A.3d 1282. The father had previously participated telephonically in a case management conference and at the jeopardy hearing, and therefore was aware that he could remotely take part in the termination proceeding.

[¶18] Furthermore, counsel withdrew from the case two months before the termination hearing, leaving the father adequate time to apply for replacement counsel who could have presented a defense on his behalf. The father never requested substitute counsel, however, despite the court's invitation to do so. *Cf. id.* ¶¶ 18-19. The result of the termination hearing not being to his liking, the father claims on appeal that he was aggrieved by his counsel's withdrawal—yet he failed to maintain contact with counsel, failed to cooperate with counsel, failed to request substitute counsel, failed to request a continuance, failed to respond to court notices, failed to appear in any capacity after the jeopardy hearing, and does not challenge the merits of the court's

_____

[7] In his reply brief, the father appears to reframe his argument, asserting that he was denied the right to counsel and therefore was deprived of due process. The father's argument is deemed waived. *See Lincoln v. Burbank*, 2016 ME 138, ¶ 41, 147 A.3d 1165 ("An issue raised for the first time in a reply brief may be viewed as not preserved for appeal."). In any event, we are not persuaded by his argument and do not address it further.

judgment terminating his parental rights. The father's claim of ineffective assistance is not persuasive when, like the reunification process, he was a nonparticipant in the judicial process.

[¶19] Because the father, although notified of the termination hearing, failed to appear at the hearing and failed to seek any relief from the court in his November 8 letter or at any other time after counsel withdrew, the father has not demonstrated prejudice that "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *See In re M.P.*, 2015 ME 138, ¶ 27, 126 A.3d 718 (citation omitted).

The entry is:

Judgment affirmed.

---

Valerie A. Randall, Esq., Rioux, Donahue, Chmelecki & Peltier LLC, Portland, for appellant father

Janet T. Mills, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen, Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Waterville District Court docket number PC-2016-48