MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2019 ME 34
Docket:      Aro-18-392
Argued:      February 20, 2019
Decided:     March 5, 2019

Panel:       ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.


IN RE CHILDREN OF TIYONIE R.


PER CURIAM

[¶1]  Tiyonie R. appeals from a judgment of the District Court (Presque Isle, *Nelson, J.*) terminating her parental rights to her two children.  She challenges the sufficiency of the evidence supporting the court's findings of parental unfitness.  We affirm the judgment.

[¶2]   The Department of Health and Human Services initiated child protection proceedings as to both children on April 25, 2017, alleging neglect by the mother.[1]  *See* 22 M.R.S. § 4032 (2018).  The court (*O'Mara, J.*) issued a preliminary protection order that day placing the children in the Department's

---

[1]  A single child protection petition was filed as to both children, naming the putative father of each as well as the children's custodian at the time—the mother's boyfriend.  The two matters were later severed (*O'Mara, J.*) and proceeded separately until again consolidated (*Soucy, J.*) for purposes of the hearing on the petition for termination of parental rights.

By a judgment entered on December 19, 2018, the court also terminated the parental rights of the younger child's father, and no appeal was taken from that judgment.  Child protection proceedings as to the older child's father are pending in the District Court.  Only the termination of the mother's parental rights is at issue in this appeal.

2

custody. *See* 22 M.R.S. § 4034 (2018). The mother waived her right to a summary preliminary hearing, *see* 22 M.R.S. § 4034(4), and she later agreed to the entry of an order (*Daigle, J.*) finding jeopardy to the children based on neglect and the threat of physical harm due to the mother's mental health issues, exposure of the children to domestic violence, and maintenance of unsuitable living conditions, *see* 22 M.R.S. §§ 4002(6), 4035, 4036 (2018). In March of 2018, the Department petitioned for the termination of the mother's parental rights to both children. *See* 22 M.R.S. § 4052 (2018). After a testimonial hearing, the court (*Nelson, J.*) made the following findings of fact, which are supported by competent record evidence. *See* 22 M.R.S. §§ 4054, 4055 (2018).

[¶3] The mother and the children came to Maine in 2017 to live with the mother's boyfriend but soon moved into a homeless shelter. The mother and the boyfriend's relationship involved domestic violence on multiple occasions; after one such incident, the mother was hospitalized in a crisis unit, and she was charged with and pleaded guilty to assault. Thereafter,

> [t]he children were left in the care of [the boyfriend] and he subjected the children to . . . abuse . . . . [The mother] failed to protect the children from the jeopardy posed by the domestic violence situation, her inability to manage her own significant mental health issues, and subjected the children to maltreatment by a partner, who had previously physically abused her.

[The mother] was diagnosed with Major Depressive Disorder, Recurrent. [She] has continually struggled to effectively manage her own mental health issues throughout the duration of this case. Her numerous hospitalizations reflect that fact that her mental state is extremely fragile and her life is susceptible to major disruptions. In light of the children's ages and reliance on others for their care, such instability is harmful to the children.

[The mother] has not only subjected the children to maltreatment by others, she has herself made a threat to kill both children. She made the threat to her former partner when he was attempting to leave her. She threatened to drown both children. . . . This behavior combined with the substantial evidence regarding [the mother's] inability to manage her mental health issues creates great risk to the health and welfare of the children, if they were in her care.

. . . .

. . . . It is all that [the mother] can do to try to attend to her own mental health issues and her personal needs. She has had only marginal success for brief periods during the pendency of this case. She simply does not have the capacity to care for the children while struggling to care for herself.

. . . .

. . . . In the fall of 2017, [the mother] abandoned her efforts in Maine to reunify with her children and headed south to be with her family. On her way, she experienced a tremendous detour in the form of an extended psychiatric stay in New Hampshire after an episode while in transit. Thereafter, [the mother] did not meaningfully participate in reunification efforts . . . . From October of 2017, to the date of the hearing on the petition for termination of parental rights, [the mother] had no contact with the children. . . .

. . . .

4

> . . . . In light of the children's ages and their need for stability, predictability and adequate care, they simply cannot wait to see if at some point in the future [the mother] makes sufficient progress in dealing with her issues to consider moving forward with reunification. Unfortunately, such progress is extremely unlikely based on her past patterns of behaviors.

Due to the oldest child's own past traumas and present diagnoses, "lack of permanency for this child is of particular import." The children have been with their current foster family since May of 2017; they are closely bonded to their foster parents and are thriving in their care.

[¶4] Based on these findings, the court found, by clear and convincing evidence, that the mother is "unwilling or unable to protect the child[ren] from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet the child[ren]'s needs," 22 M.R.S. § 4055(1)(B)(2)(b)(i); is unwilling or unable to take responsibility for the children "within a time which is reasonably calculated to meet the child[ren]'s need[s]," 22 M.R.S. § 4055(1)(B)(2)(b)(ii); and has failed to make a good faith effort to rehabilitate and reunify with the children, *see* 22 M.R.S. § 4055(1)(B)(2)(b)(iv). The court further determined that termination of the mother's parental rights is in the children's best interests. *See* 22 M.R.S. § 4055(1)(B)(2)(a).

[¶5]   The mother timely appeals, challenging the sufficiency of the evidence supporting all three grounds of parental unfitness.  *See* 22 M.R.S. § 4006 (2018); M.R. App. P. 2B(c)(1).  She points out that she participated in reunification services until October of 2017 and argues that there is insufficient evidence to establish that she cannot become a fit parent "within a time which is reasonably calculated to meet the child[ren]'s needs" because the parental rights of the older child's father have not been terminated, and therefore both children are not yet eligible for adoption in any event.   22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii).

[¶6] We conclude that the record contains sufficient evidence to support the court's findings as to all three grounds of parental unfitness.  *See In re Cameron B.*, 2017 ME 18, ¶ 10, 154 A.3d 1199 (stating that we review the court's findings of parental unfitness "for clear error and will reverse a finding only if there is no competent evidence in the record to support it, if the fact-finder clearly misapprehends the meaning of the evidence, or if the finding is so contrary to the credible evidence that it does not represent the truth and right of the case" (quotation marks omitted)).  As the mother acknowledges, the court must examine from the child's perspective—not the parent's—the time within which the parent can take responsibility for a child and protect that child

6

from jeopardy. *See* 22 M.R.S. § 4050 (2018); *In re Child of Ronald W.*, 2018 ME 107, ¶ 11, 190 A.3d 1029. These children have been in the Department's custody for almost two years. In those two years, the mother has made little to no progress with her significant mental health issues and none is likely in the foreseeable future. More recently, she declined to engage in any rehabilitation or reunification services, and, by the time of the hearing, she had not seen her children in several months.[2] Although the mother offered contradictory evidence regarding her fitness as a parent, the weight and credibility of that evidence was for the trial court's determination. *See In re Child of Ronald W.*, 2018 ME 107, ¶ 11, 190 A.3d 1029.

[¶7] The fact that the older child's father's parental rights have not been terminated is also no basis to conclude that the mother's parental rights were erroneously terminated. Although the pending proceeding as to the older child's father may prevent the immediate adoption of that child, *see* 18-A M.R.S. § 9-302(a)(2), (b) (2018), the termination of a father's parental rights is not a factual predicate to the termination of the mother's parental rights, *see* 22 M.R.S. § 4055(1)(B)(2). Moreover, a parent whose rights have been terminated

---

[2] This evidence also supports the court's determination that termination of the mother's parental rights is in the children's best interests, and we discern no abuse of discretion in that conclusion. *See In re Child of Troy C.*, 2018 ME 150, ¶ 8, 196 A.3d 452 (stating that we review the court's best interest finding for clear error or an abuse of discretion).

has no interest in post-termination proceedings, 22 M.R.S. § 4056(1), (3) (2018), and "[t]he termination of one parent's rights shall not affect the rights of the other parent," 22 M.R.S. § 4056(2) (2018). Thus, the termination or nontermination of one parent's rights may be of no moment in the determination of whether it is appropriate to terminate the other parent's rights.

The entry is:

Judgment affirmed.

John W. Tebbetts, Esq., Tebbetts Law Office, LLC, Presque Isle, for appellant mother

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Presque Isle District Court docket numbers PC-2017-7 and PC-2018-1
FOR CLERK REFERENCE ONLY