MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:      2019 ME 93
Docket:        Cum-18-477
Submitted
  On briefs:   May 30, 2019
Decided:       June 11, 2019

Panel:         SAUFLEY, C.J., and ALEXANDER, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

IN RE CHILD OF DAWN B.

PER CURIAM

[¶1] Dawn B. and Michael L. both appeal from a judgment of the District Court (Portland, *Eggert, J.*) terminating their parental rights to their child. The mother challenges only the court's denial of her motion for relief from the termination judgment in which she alleged that she received ineffective assistance of counsel during the proceedings. The father argues that there was insufficient evidence to support the termination of his parental rights. We affirm the judgment.

I. BACKGROUND

[¶2] On March 23, 2017, the Department of Health and Human Services instituted child protection proceedings on behalf of this child as to both parents, alleging that the child had been in the care of the maternal grandparents since birth and that the maternal grandparents were unable to

adequately care for the child.[1]  *See* 22 M.R.S. § 4032 (2018).  The parents later agreed to the entry of a jeopardy order in which the court found that the parents have never been primary caretakers for the child; that their apartment was unsuitable for reunification; and that the father lacked basic parenting skills, has anger management issues, has been verbally abusive to the mother while he was holding the child, has a history of domestic violence, abuses alcohol, suffers from anxiety and depression, and has health issues that impair his ability to care for the child.  *See* 22 M.R.S. §§ 4002(6), 4035, 4036 (2018).  With the agreement of the parties, the court entered judicial review and permanency planning orders dated January 25, 2018, and July 27, 2018, maintaining custody of the child with the Department.

[¶3]  On September 6, 2018, the Department petitioned to terminate the mother's and father's parental rights, alleging that neither parent had engaged in any of the rehabilitation and reunification services necessary to alleviate jeopardy.  *See* 22 M.R.S. § 4052 (2018).  After a testimonial hearing, the court

---

[1]  Because the child was then placed in the care of other relatives as part of a safety plan, the Department did not seek a preliminary protection order at that time.  Six weeks later, the Department requested—and the court granted—a preliminary protection order placing the child in the Department's custody after the relatives were unable to continue caring for the child.  *See* 22 M.R.S. § 4034 (2018).  The mother and father waived their right to a summary preliminary hearing.  *See* 22 M.R.S. § 4034(4).

The maternal grandparents were later granted interested party status; they are not parties to this appeal.  *See* 22 M.R.S. § 4005-D (2018).

entered a judgment terminating both parents' rights to the child. *See* 22 M.R.S. § 4054 (2018). The court made the following findings of fact, which are supported by competent record evidence.

> [The mother] reports that she was unaware that she was pregnant until she arrived at the emergency room . . . . When their child was ready to leave the hospital, the parents realized that they were not prepared to bring home and raise a baby. They agreed to place their child with [the mother's] parents. Very little about the parents['] ability to raise a child has changed since that time.
>
> Unfortunately, the placement of the child with the mother's parents turned out to be not appropriate [and] . . . the child was removed from the grandparents and a new placement was arranged . . . .
>
> . . . . The parents have not had much success in completing the [rehabilitation and reunification] plan.
>
> . . . .
>
> The mother has completed a parenting course, and has had regular visitation with her child since January 2018. That visitation continues to be fully supervised and [the mother] requires many prompts from the supervisor to appropriately tend to her child and keep her safe. This contact with her child is well short of demonstrating her ability to take on a primary care role for the child. [The mother] did attend some counseling but began to miss appointments and that counseling stopped without [the mother] having made any progress toward the goals of the counseling. [The mother] has been unable at this time and throughout the pendency of the case to obtain housing suitable for reunification with her child. . . . The summary of [the mother's diagnostic evaluation] is that [the mother] has a poor prognosis for being able to successfully address the jeopardy which continues to exist in this case. [The mother] has not been responsible for primary care of

her child since the child's birth almost two years ago. She is also no closer to being able to take on that primary care role now than she was when she turned over that care to her parents.

The father made an appointment for a mental health evaluation . . . , but did not succeed in having a clinician assigned to treat with him because of memory problems related to strokes he has suffered. He did complete a [diagnostic evaluation] and one result of that was a referral to a clinician who works with adults with memory impairment. After one visit for evaluation he stopped attending. [The father's diagnostic evaluation] was not very successful due to his being less than forthcoming, and . . . he ha[s] a poor prognosis for making the changes necessary to alleviate jeopardy. He has not attended and completed a parenting education program nor attended the Strong Father's program. He is still living in the apartment that was determined to be inadequate after his child was born and he has not been able to find appropriate housing for purposes of reunification. He has not had any contact with his child since May 25, 2018, and his contact before that was sporadic. . . . He has never had any primary care responsibility for his child and he is now no closer to being able to take on that responsibility than he was when his child left the hospital after her birth.

[The child] has been in the consistent care of [her] resource parents . . . since May 3, 2017. She is up to date with all her medical appointments and is meeting developmental milestones. She is an active toddler who attends day care. She is walking regularly and beginning to say some words. The resource parents report that she eats and sleeps well and is generally a happy child. The resource parents are willing to adopt [the child] at this time. . . .

[¶4] Based on these findings, the court determined that the parents are unable to protect the child from jeopardy and unable to take responsibility for the child within a time that is reasonably calculated to meet the child's needs,

the parents failed to make a good faith effort to rehabilitate and reunify with the child, and termination is in the best interest of the child.[2]  *See* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i), (ii), (iv) (2018); *see also* 22 M.R.S. § 4041(1-A)(B) (2018). Both parents timely appealed. *See* 22 M.R.S. § 4006 (2018); M.R. App. P. 2B(c)(1).

[¶5]  The mother then filed a motion for relief from the termination judgment pursuant to M.R. Civ. P. 60(b)(6), with an accompanying affidavit, alleging that her trial attorney provided ineffective assistance of counsel.  The court denied the motion.[3]

## II.  DISCUSSION

A.    Ineffective Assistance of Counsel

[¶6]  The mother challenges only the court's order denying her motion for relief from judgment on the ground of ineffective assistance of counsel. When a parent challenges the termination of his or her parental rights on the basis of ineffective assistance of counsel, it is that parent's burden to establish

---

[2] The court's initial termination judgment, entered on November 15, 2018, made findings only as to parental unfitness. *See* 22 M.R.S. § 4055(1)(B)(2)(b) (2018).  The next day, the court, sua sponte, entered an amended termination judgment containing findings as to parental unfitness and the best interest of the child. *See* 22 M.R.S. § 4055(1)(B)(2)(a)-(b) (2018).

[3] We granted the mother's request to allow the District Court to consider the motion for relief from judgment notwithstanding the pending appeal.  The mother filed a second notice of appeal from the denial of her motion for relief from judgment, which was consolidated with the parents' appeals from the termination judgment.

6

that "(1) counsel's performance was deficient, i.e., that there has been serious incompetency, inefficiency, or inattention of counsel amounting to performance below what might be expected from an ordinary fallible attorney, and (2) the parent was prejudiced by the attorney's deficient performance in that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *In re Child of Stephen E.*, 2018 ME 71, ¶ 13, 186 A.3d 134 (alteration omitted) (quotation marks omitted).

[¶7] Of the two procedural mechanisms we have identified by which a parent may assert such a claim in a proceeding to terminate parental rights, the mother chose to file a motion for relief from judgment pursuant to M.R. Civ. P. 60(b)(6).[4] *See In re Child of Stephen E.*, 2018 ME 71, ¶ 12, 186 A.3d 134. This procedure required the mother to submit with her motion an affidavit "stating, with specificity, the basis for the claim" as well as "affidavits from any individuals the parent asserts should have been called as witnesses during the termination hearing, and from any individuals who have evidence that would bolster the parent's claim that the performance of his or her attorney was

---

[4] In the alternative, a parent may assert ineffective assistance of counsel in a direct appeal based on the existing record. *In re Child of Stephen E.*, 2018 ME 71, ¶ 12, 186 A.3d 134.

deficient and that the deficiency affected the fairness of the proceeding." *In re M.P.*, 2015 ME 138, ¶ 21, 126 A.3d 718.

[¶8]  In her affidavit accompanying her motion for relief from judgment, the mother stated that her trial counsel was ineffective in that she "failed to seek hearing on kinship placement" with the maternal grandparents and "failed to advise [her] that [she] could seek judicial review at various stages of this case and have the court hear additional evidence and review the jeopardy findings and progress toward reunification."[5]  *See* 22 M.R.S. § 4005-G(1) (2018) (discussing the legislative preference for kinship placement); 22 M.R.S. § 4038(2), (5) (2018) (allowing a parent to seek judicial review, at which the court will consider evidence regarding the child's placement).  Had she known that was an option, the mother asserted, she would have sought the appointment of the child's maternal grandparents as permanency guardians and her parental rights likely would not have been terminated.[6]

---

[5] Thus, the mother does not challenge the termination proceedings themselves but instead asserts that she was denied effective assistance of counsel during the judicial review stages preceding the termination hearing.  Because judicial review orders are not appealable decisions, *see* 22 M.R.S. § 4006 (2018); *In re B.C.*, 2012 ME 140, ¶ 12, 58 A.3d 1118, we will not address the effectiveness of counsel at that stage of the proceedings.  Here, however, the court based its denial of the mother's motion for relief from judgment on the absence of prejudice affecting the termination proceeding itself, and we therefore review that analysis.

[6] With her affidavit, the mother purported to submit additional evidence consisting of letters from the maternal grandmother and two of the maternal grandmother's doctors.  One of the doctor's letters was signed and sworn before a notary; the maternal grandmother's letter contains the apparent signature of a notary but no jurat, and the second doctor's letter contains no jurat or notary

8

[¶9] The court did not address whether the performance of the mother's counsel was deficient at any stage of the proceedings but rested its denial of the motion on its determination that the mother failed to establish the second element of ineffective assistance of counsel—that she suffered any prejudice by her attorney's performance. In particular, the court found that the maternal grandparents were not licensed foster parents; that the maternal grandparents likely would not have been appointed permanency guardians in this matter; that the maternal grandparents' inability to provide adequate care for the child—because their home was filthy and cluttered, their heater was broken, and they lacked the financial resources to adequately feed the child—caused the Department to institute child protection proceedings in the first place; and that the maternal grandparents were not an appropriate adoptive placement. On this basis, the court determined, "it was not highly probable that requesting a hearing on placement would have changed the outcome in this case." Because the mother had the burden of proof before the trial court and failed to meet that burden, we will disturb the court's findings of fact only if we determine that the trial court was compelled to find in the mother's favor. *See In re Alexandria C.*, 2016 ME 182, ¶ 19, 152 A.3d 617. We review the court's ultimate decision to

---

signature. *See In re Tyrel L.*, 2017 ME 212, ¶ 10, 172 A.3d 916 (stating that a signed document "is not an affidavit [when] it bears no jurat").

grant or deny the motion for relief from judgment for an abuse of discretion. *See id.*

[¶10]  We conclude that the court's findings are adequately supported by the existing record as supplemented by those affidavits that were properly executed and submitted with the mother's motion.  At the termination hearing, the court admitted evidence from the GAL, the Department's permanency caseworker, the father, and the maternal grandmother herself that supported the court's findings that the maternal grandparents' home was not suitable for raising this child and that the maternal grandparents' inability to provide adequate care for the child is what led to the Department's initial involvement in the matter.[7]  Although the mother suggests that the court assigned too much weight to the evidence presented by the Department and not enough weight to the evidence she presented regarding the maternal grandparents' ability and willingness to care for the child, the assessment of the weight and credibility of the evidence was for the trial court alone.  *See In re Children of Tiyonie R.*, 2019 ME 34, ¶ 6, 203 A.3d 824.

---

[7]  This evidence also supports the findings in the termination judgment that "the placement of the child with the mother's parents turned out to be not appropriate" and "the maternal grandparents . . . turned out not to be a safe placement."  The mother has expressly waived any challenge to these findings by stating in her brief, "For purposes of providing this Court with factual background and because the [mother] is solely raising the issue of ineffective assistance of counsel, the [mother] adopts the findings as stated by the trial court in its Order Terminating Parental Rights."

10

[¶11]   The court's findings that a permanency guardianship was an unlikely result in this matter and that the maternal grandparents would not have been an appropriate adoptive placement are supported by this same evidence.  Title 22 M.R.S. § 4038-C(1) (2018) sets out the requirements for ordering a permanency guardianship, including that the guardian "[h]as the ability to provide a safe home for the child."  22 M.R.S. § 4038-C(1)(A).  We have noted that a permanency guardianship may be ordered "to establish safe, long-term care for a child," but it is not appropriate when the child "need[s] the certainty and stability of adoption" and the parties otherwise need clarity in their respective roles.  *In re Cameron B.*, 2017 ME 18, ¶¶ 12-13, 154 A.3d 1199.  Similarly, adoption is appropriate in accordance with the child's best interest when, among other requirements, the adoptive parent can provide the adoptee with her basic needs and a safe and stable living environment.  *See* 18-A M.R.S. §§ 9-304, 9-308(b) (2018); 19-A M.R.S. § 1653(3) (2018); *see also* 22 M.R.S. § 4038-E (2018).   Thus, a court's supported finding that a person cannot provide adequate care for a child precludes his or her appointment as either a permanency guardian or an adoptive parent.[8]

---

[8] We note that the mother personally attended both of the judicial review hearings and agreed to the disposition for each, including provisions that "[t]here are no relatives with whom the child may be placed."  We also observe that the maternal grandparents, although interested parties, never sought placement of the child with them.  *See* 22 M.R.S. § 4005-H(2) (2018).

[¶12]  As to the requirement of a foster license, 22 M.R.S. § 4005-G(6) (2018) states that "[t]he [D]epartment is not required to consider residential placement of a child with a relative who does not exercise due diligence to obtain a license as a family foster home, including by applying for a license, attending all required trainings, cooperating with a home study and promptly addressing any problems identified by the [D]epartment that prevent the [D]epartment from granting the license."  The GAL testified at the termination hearing that she informed the maternal grandmother on more than one occasion that she needed to obtain a foster parent license if she wished to seek placement of the child with her, but the maternal grandparents had not taken any steps toward obtaining a license.  The maternal grandmother also testified at the termination hearing that two people informed her that she needed a license to become a foster parent and that she did not obtain such a license.

[¶13]  We conclude that the trial court was not compelled to find in the mother's favor on the underlying facts and that the court did not abuse its discretion by denying her motion for relief from the termination of her parental rights.[9]  *See In re Alexandria C.*, 2016 ME 182, ¶ 19, 152 A.3d 617.

---

[9]  We are not persuaded by the mother's contention that the court was required to conduct a testimonial hearing on her motion for relief from judgment.  We have left it to the trial court to determine "what process is necessary to meaningfully assess a parent's claim [of ineffective assistance of counsel through a motion pursuant to M.R. Civ. P. 60(b)] while balancing the State's

12

B.    Sufficiency of the Evidence

[¶14]  The father argues that there is insufficient evidence in the record to support the court's termination of his parental rights.  He does not argue that he is currently able to parent his child but instead contends that he could parent the child if given more time for rehabilitation and reunification and that remaining in the Department's custody for an additional period of time would not have harmed the child.  We review the court's findings of fact supporting its determinations of parental unfitness and best interest for clear error, and we will uphold those findings if there is any competent evidence in the record to support them.  *In re Children of Tiyonie R.*, 2019 ME 34, ¶ 6, 203 A.3d 824.  We review the court's ultimate determination of best interest for an abuse of discretion.  *Id.* ¶ 6 n.2.

---

important interest in expeditiously establishing permanent plans for children."  *In re M.P.*, 2015 ME 138, ¶¶ 35-36, 126 A.3d 718 ("In some cases, it may be necessary to assess the credibility of the witnesses from whom the court receives affidavits to resolve disputes of fact that would establish whether counsel was ineffective.  In this case, however, the affidavits were sufficient to demonstrate the quality of the mother's additional evidence so that the court could assess both the attorney's judgment . . . and whether [the attorney's actions] prejudiced the mother.").

This is unlike when a party asserts ineffective assistance of counsel in a direct appeal based only on the record from the termination proceedings.  *See In re Aliyah M.*, 2016 ME 106, ¶¶ 6-7, 144 A.3d 50.  In those matters, we review the existing record to determine if the parent has established ineffective assistance of counsel on a prima facie basis.  *Id.* ¶ 12.  If so, we remand the matter to the trial court for a factual adjudication on the merits of the claim because the issue of ineffective assistance of counsel *has not yet been presented to the trial court.  See id.*

[¶15] Contrary to the father's contention, the court did not err or abuse its discretion in terminating his parental rights. The court's findings of parental unfitness—that the parents do not have suitable housing to care for the child, are unable to provide primary care for the child without assistance, and have made little or no progress in addressing any of the issues that led to the entry of the jeopardy order—are supported by evidence from the GAL, the visit supervisors, the Department's permanency caseworker, the parents' diagnostic evaluator, and the mother's counselor. That evidence, in addition to the testimony regarding the love and appropriate care the child receives from her pre-adoptive foster parents, also supports the court's finding that termination of the parents' rights is in the child's best interest, and the court did not abuse its discretion in making that best interest determination. *See id.*

[¶16] As we have often stated, "the court must examine from the child's perspective—not the parent's—the time within which the parent can take responsibility for a child and protect that child from jeopardy." *In re Children of Tiyonie R.*, 2019 ME 34, ¶ 6, 203 A.3d 824 (affirming a termination of parental rights when, as here, the children had been in the Department's custody for almost two years, the parent had made little progress in rehabilitation and reunification services, and the parent had not seen the children in several

months); *see* 22 M.R.S. § 4050(2) (2018) (setting out the Legislature's goal of "[e]liminat[ing] the need for children to wait unreasonable periods of time for their parents to correct the conditions which prevent their return to the family"). In this matter, as in *In re Child of Mercedes D.*, 2018 ME 149, ¶ 22 n.5, 196 A.3d 888, "the father will remain parentally unfit for too long as measured from the child's perspective, and . . . the child's best interest will be served with the permanence that comes with adoption generally."

The entry is:

Judgment affirmed.

---

Seth Berner, Esq., Portland, for appellant father

Valerie A. Randall, Esq., Hanly Law, Portland, for appellant mother

Aaron M. Frey, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Portland District Court docket number PC-2017-31
FOR CLERK REFERENCE ONLY