MAINE SUPREME JUDICIAL COURT                              Reporter of Decisions
Decision:    2018 ME 82
Docket:      And-17-515
Argued:      May 16, 2018
Decided:     June 26, 2018

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, JABAR, HJELM, and HUMPHREY, JJ.

## IN RE CHILDREN OF JEREMY A.

HJELM, J.

[¶1]  On the third appeal in this child protection matter, *see In re E.A.*, 2015 ME 37, 114 A.3d 207 (*Evelyn I*); *In re Evelyn A.*, 2017 ME 182, 169 A.3d 914 (*Evelyn II*), the parents of two children challenge the judgment entered by the District Court (Lewiston, *Dow, J.*) terminating their parental rights and denying their motions to reopen the record and for relief from judgment.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  Much of the procedural history—which has been anything other than linear—and the description of the facts in this case are set out in the opinions we issued in the first two appeals.  *See Evelyn I*, 2015 ME 37, ¶¶ 2-6, 114 A.3d 207; *Evelyn II*, 2017 ME 182, ¶¶ 1-13, 169 A.3d 914.  Here, to provide context to the issues presented, we briefly review some of that material, and we describe developments since the most recent appeal.

[¶3]  In 2003, the parents' 21-month-old son, Nathaniel, died.  The mother was convicted of manslaughter for Nathaniel's death, *see State v. Allen*, 2006 ME 20, 892 A.2d 447, and the father was convicted of assaulting him the night before he died, *see State v. Allen*, 2006 ME 21, 892 A.2d 456.  Ten years after they were convicted, the mother and father became parents to the twins who are the subject of this proceeding.  Less than a week after the children were born prematurely and while they were still hospitalized, the Department of Health and Human Services sought a preliminary protection order on the basis of the parents' convictions for the crimes they had committed against Nathaniel.  The court (*Oram, J.*) issued the order and gave custody of the children to the Department.  Directly following the children's release from the hospital, they were placed in the foster home where they have lived ever since.

[¶4]  The court held a lengthy jeopardy hearing in the late winter and spring of 2014, where the parents offered evidence challenging the cause of Nathaniel's death, "did not accept responsibility for Nathaniel's death, and . . . expressed their belief that his death was caused by some other undiagnosed medical problem, possibly due to his immunizations or a seizure or metabolic disorder." *Evelyn II*, 2017 ME 182, ¶ 6, 169 A.3d 914.  In early June of 2014, the court (*Beliveau, J.*) entered an order finding the children to be in circumstances

of jeopardy. Because the court also found aggravating factors based on the parents' convictions for their crimes against Nathaniel, the court ordered the Department to cease reunification efforts. *See* 22 M.R.S. §§ 4002(1-B)(A), (B)(3), (5) and 4041(2)(A-2)(1) (2017). On the parents' appeal, we affirmed the jeopardy order in March of 2015. *See Evelyn I*, 2015 ME 37, ¶¶ 1, 14, 114 A.3d 207.

[¶5] The Department had petitioned for termination of parental rights in July of 2014. After a two-day hearing held in October of 2015, the court (*Dow, J.*) entered a judgment in early 2016 terminating the rights of both parents to the children. The parents filed timely notices of appeal, but the father moved to stay the appellate proceedings because he anticipated filing a motion for relief from judgment pursuant to Maine Rule of Civil Procedure 60(b). We granted the motion to stay, and eventually, in June of 2016, both parents filed a joint Rule 60(b) motion, which, as amended five months later,[1] alleged ineffective assistance of counsel for each parent at both the jeopardy and termination hearings.

---

[1] In an appeal that followed, we held that the court abused its discretion by allowing the Rule 60(b) motion to be amended so belatedly because of the importance of "finding permanency for the child within a reasonable time." *In re Evelyn. A.*, 2017 ME 182, ¶ 18, 169 A.3d 914. As we note later in the text, *see infra* ¶ 9, these delays in the proceedings caused by the parents factored into our remand instructions for the court to act with considerable caution if—as they did—the parents sought to reopen the record.

[¶6] In December of 2016, the court held a hearing on the motion. During the hearing, the parents presented testimony from a forensic pathologist whom the court had not allowed to testify at the termination hearing because even approximately two months after the expiration of the deadline to exchange expert reports, counsel for the mother had not yet produced a report, and the court then denied the mother's late motion for enlargement of time to exchange reports. During the motion hearing, the forensic pathologist questioned the determination reached by the physician whose practice focuses on child abuse and who had testified at both the manslaughter trial and the jeopardy hearing that Nathaniel's fatal injuries were "inflicted." That child abuse specialist also testified at the motion hearing and stated that, despite the opinions of the parents' expert, his original opinion remained unchanged and that, in his view, the opinion of the parents' expert was unsupported by the medical evidence and the medical community's understanding of head trauma in children. During the hearing, the parents also testified, both still maintaining that the mother was not responsible for Nathaniel's death.

[¶7] In February of 2017, the court issued an order granting the Rule 60(b) motion based on a conclusion that the parents had been deprived of effective representation at the jeopardy hearing because, in the court's view,

counsel improperly failed to advise the parents to accept an offer that would have allowed reunification services to continue. For that reason, the court vacated the termination order, reinstated the jeopardy order, and ordered the Department to offer the parents a proposed jeopardy order that would allow for reunification services.

[¶8]  On an appeal taken by the Department, we issued an opinion in August of 2017 concluding that the court erred by addressing the claim of ineffectiveness of counsel at the jeopardy hearing. *See Evelyn II*, 2017 ME 182, ¶¶ 3, 34, 169 A.3d 914. We therefore vacated the court's order and remanded for the court to reconsider the evidence presented during the termination hearing because the court erroneously imposed a burden of proof on the parents. *Id*. We also ordered that, if the court again determined that parental rights should be terminated, the court would then be required to consider the parents' Rule 60(b) motion but only to the extent that it alleged ineffectiveness of counsel at the termination hearing. *Id.*

[¶9]  The parents moved for us to reconsider the scope of the remand proceedings. By order dated September 15, 2017, we denied the motion, making clear that when the court readdressed the issue of termination on remand, the record would include "any evidence that was appropriately

considered" during the termination hearing but that the parents also would be entitled to move to reopen the record if there had been changes in circumstances after the original termination hearing. Importantly for this case, we stated that the court "would grant such a motion only if it determines that reopening the record is appropriate in the circumstances, taking into account that the passage of time resulted largely from the parents' own motions for enlargement of time and their subsequent filing of a late motion to amend their Rule 60(b) motion." We also stated that the record to be considered by the court in adjudicating the termination petition "does *not* include evidence offered in the Rule 60(b) proceeding." (Emphasis added.) This had the direct effect of foreclosing the court from considering the testimony of the parents' expert regarding the cause of Nathaniel's death as part of the termination hearing record, leaving it germane only to the claim of ineffectiveness.

[¶10] Within several weeks after the case was remanded, the parents filed two sequential motions to reopen the record of the termination hearing. *See* M.R. Civ. P. 43(j). Both motions sought to allow the development of two additional areas of evidence: the testimony of their expert witness presented at the Rule 60(b) motion hearing and updated evidence about the children's circumstances since the termination hearing held in October 2015. In the first

motion, the parents recited that they had attached affidavits describing updated information relating to the children. In fact, no such affidavits accompanied the motion. The second motion, which the parents referred to as their amended motion, requested that the court accept affidavits in lieu of testimony, but the parents again did not submit any affidavits and did not suggest what evidence they wanted to present about the children for the court to consider.

[¶11] A month later, the court issued a consolidated order adjudicating all matters pending before it. First, using the standard prescribed in our September 2017 order denying the parents' motion to reconsider and concluding that it was not appropriate to reopen the record, the court denied the parents' motion to reopen the evidence.

[¶12] Second, the court terminated the parental rights of the parents. The court pointed to, among other things, the convictions for acts of violence committed by each parent against Nathaniel—with the mother having been convicted for causing his death; each parent's denial of responsibility for, and lack of insight into, the cause of Nathaniel's death and their deflection of blame to an "unfair judicial system"; the absence of any protections that could be

imposed to protect the children; and the best interests of the children, which would be promoted by termination.

[¶13]   Finally, the court denied the parents' Rule 60(b) motion as it related to the termination hearing.  The court found that representation of the mother was deficient because her attorney had failed to timely designate the forensic pathologist as a witness and provide a report to the Department.  The court concluded, however, that although it had now heard "the medical testimony the parents had wanted for so long to present," that testimony was not of sufficient merit to demonstrate even that the parents could reasonably believe that, as the pathologist opined, there were causes for Nathaniel's injuries and death other than the mother's criminal agency.  Based on this, the court concluded that the ineffectiveness of the counsel's representation of the mother did not result in prejudice.  As to the father, the court found no ineffectiveness because his counsel made a reasonable choice to focus on a post-jeopardy-hearing assessment of the risk posed by the father to the children rather than to relitigate the assault against Nathaniel for which the father had been convicted.  Concluding that the termination hearing "produced a just result" as to each parent, the court denied their motion for relief from judgment.

[¶14]  The parents timely appealed to us.  *See* M.R. App. P. 2B(c).

## II.  DISCUSSION

[¶15]  The parents assert that the court erred by denying their motion to reopen the record and by denying their Rule 60(b) motion.[2]  We address these challenges in turn.

A.    Motion to Reopen the Evidence

[¶16]   "A party who has rested cannot thereafter introduce further evidence except in rebuttal unless by leave of court."  M.R. Civ. P. 43(j).  In the context of a proceeding on a petition for termination of parental rights, we have held that a court should, but is not required to, reopen the evidence "when there is evidence relevant to the issues in the case."  *In re Danielle S.*, 2004 ME 19, ¶ 2, 844 A.2d 1148.

[¶17]  Here, the parents moved to reopen the termination record on two issues.  First, the parents sought to include the testimony of their expert witness, developed during the Rule 60(b) motion hearing, on medical issues relating to Nathaniel's death.  In our September 2017 order denying the

---

[2] The parents also challenge the court's determination that termination of their parental rights is in the children's best interests.  There is competent evidence in the record supporting that conclusion by a clear and convincing standard of proof, *see In re Children of Amber L.*, 2018 ME 55, ¶ 4, --- A.3d ---; 22 M.R.S. § 4055(1)(B)(2) (2017), and we do not discuss it further.

parents' motion for us to reconsider the remand order in *Evelyn II*, however, we explicitly circumscribed the record the court was to reconsider in adjudicating the termination petition so as to exclude evidence developed at the motion hearing.  This is because the purpose of that portion of the remand was to allow the court to reconsider the evidence on termination pursuant to a correct evidentiary framework.  *See Evelyn II*, 2017 ME 182, ¶ 33, 169 A.3d 914. Although we ordinarily review a court's decision on a motion to reopen the evidence for an abuse of discretion, *see In re Danielle S*., 2004 ME 19, ¶ 2, 844 A.2d 1148, here the court had no discretion and acted properly by denying that part of the parents' motion.[3]

[¶18]   Second, the parents sought to reopen the record to present evidence about developments in the children's lives after the termination hearing, which is evidence that the parents claim is relevant to the issues of parental unfitness and the children's best interests.  During the two years following the original termination hearing, the children remained with the foster parents who, as the court described them, are "extraordinarily

---

[3]  In any event, because the court ultimately rejected the opinions of the parents' expert, it is apparent that even if the testimony of the parents' expert had been included in the termination record, that evidence would not have affected the court's ultimate determination to terminate the parents' parental rights.

experienced" and provide the children with "excellent care," and to whom the children are "very attached." The parents had regular contact with the children even after the termination order issued in 2015, and therefore were in a position to make an offer of proof regarding the prospective evidence about the children's present circumstances. Nonetheless, they did not make any such proffer.[4]

[¶19] We recognize that in child protection proceedings, the court is in a position to consider ongoing changes in the circumstances of both children and parents. *See In re Child of James R.*, 2018 ME 50, ¶ 19, 182 A.3d 1252; *In re Paige L.*, 2017 ME 97, ¶ 31, 162 A.3d 217; *In re Marcus S.*, 2007 ME 24, ¶ 10, 916 A.2d 225; *In re Heather G.*, 2002 ME 151, ¶ 14, 805 A.2d 249; *In re Scott S.*, 2001 ME 114, ¶ 15, 775 A.2d 1144. Nonetheless, given the fundamental goal of providing children with permanence in their lives, *see* 22 M.R.S. §§ 4003(4), 4050 (2017); *see also Evelyn II*, 2017 ME 182, ¶ 18, 169 A.3d 914, and the caution that we directed the court to exercise if the parents were to move to reopen the evidence, the court did not abuse its discretion or violate the parents' constitutional right that protects their relationship with the children when it

---

[4] Instead, the parents simply assert in their brief, "an awful lot can change in approximately two years. The [D]istrict [C]ourt erred by not bothering to check if that was the case here."

reconsidered the termination petition based on the then-existing record, *see In re M.P.*, 2015 ME 138, ¶¶ 30-32, 126 A.3d 718 (explaining, in a child protection case, that due process is determined by balancing the parent's rights with the State's right to provide "stability and permanency" in a child's life); *Pitts v. Moore*, 2014 ME 59, ¶¶ 12, 14, 90 A.3d 1169 ("[T]he State has a compelling interest in limiting, restricting, or even terminating a parent's rights when harm to the child will result from the absence of such governmental interference.").

B.     Ineffective Assistance of Counsel

[¶20]  We next turn to the parents' contentions that the court erred by determining that, at the 2015 termination hearing, the mother was not prejudiced by her attorney's ineffective representation and that the father's counsel's performance was not deficient in the first place.

[¶21]  A parent alleging ineffective assistance of counsel in a child protection case has the burden to show that "(1) counsel's performance was deficient, i.e., that there has been serious incompetency, inefficiency, or inattention of counsel amounting to performance . . . below what might be expected from an ordinary fallible attorney; and (2) the deficient performance prejudiced the parent's interests at stake in the termination proceeding to the extent that the trial cannot be relied on as having produced a just result." *In re*

*Alexandria C.*, 2016 ME 182, ¶ 18, 152 A.3d 617 (quotation marks omitted).

When considering the issue of prejudice, the court must "determine if there is

a 'reasonable probability' that the ineffectiveness resulted in a different

outcome—meaning, whether ineffective assistance of counsel rose to the level

of compromising the reliability of the [judgment] and undermining confidence

in it." *Theriault v. State*, 2015 ME 137, ¶ 25, 125 A.3d 1163.  Because the parents

had the burden of proof at the motion hearing to prove ineffectiveness, they

must demonstrate here that the evidence compelled a contrary outcome.  *In re*

*Alexandria C.*, 2016 ME 182, ¶ 19, 152 A.3d 617.  While "[w]e review the factual

findings underlying ineffectiveness claims for clear error," we review for an

abuse of discretion the "trial court's ultimate denial of a Rule 60(b) motion." *Id*.

[¶22]  The mother stridently asserts that the court erred by rejecting the

testimony of the forensic pathologist who stated that Nathaniel's death could

have resulted from several accidental falls, which the mother reported.  This

assertion, however, fails to account for two aspects of the record.  First, the

mother was prosecuted for Nathaniel's death and was convicted of

manslaughter, *see Allen*, 2006 ME 20, ¶¶ 6-10, 892 A.2d 447, meaning that it is

established that she caused Nathaniel's death recklessly or with criminal

negligence, *see* 17-A M.R.S. § 203(1)(A) (2017).  That conviction was affirmed

on appeal, *see Allen*, 2006 ME 20, ¶ 27, 892 A.2d 447, and conclusively establishes her personal and criminal responsibility for the child's death, *see In re Shulikov*, 2000 ME 70, ¶ 12, 749 A.2d 1270 (explaining, in a termination of parental rights case, that "[t]he doctrine of collateral estoppel . . . bar[s] relitigation of the facts resolved by the criminal convictions); *cf. Evelyn II*, 2017 ME 182, ¶ 34, 169 A.3d 914 (referring to the "undisturbed criminal convictions" entered against the parents for the crimes of violence they committed against Nathaniel).

[¶23]  Second, at the Rule 60(b) motion hearing, the parents thoroughly developed the testimony of their expert in an attempt to demonstrate, at the very least, the reasonableness of the parents' firmly held notion that the mother did not bear responsibility for Nathaniel's death.  In response, the Department also presented the testimony of a qualified physician who roundly and vigorously disagreed with the parents' expert both on the particular aspects of Nathaniel's fatal injuries and on her description of the state of medical understanding of abusive head trauma cases.  Given this record, basic principles of appellate review make it evident that the mother's contention on appeal is without merit.[5]  *See In re Aliyah M.*, 2016 ME 106, ¶ 19, 144 A.3d 50; *Gordon v.*

---

[5]  Contrary to the parents' argument, the record does not demonstrate that the court applied an incorrect standard in its examination of prejudice.  Although the court made one statement that the

*Cheskin*, 2013 ME 113, ¶ 12, 82 A.3d 1221 (explaining that factual findings are reviewed for clear error and deference is given to the court's determinations of witness credibility).

[¶24] For his part, the father contends that the court erred by failing to find ineffectiveness in two ways. Neither is persuasive. First, as the court found, the father's intransigent minimization of his assaultive conduct toward Nathaniel made it reasonable for his attorney, at the termination hearing, not to relitigate the medical issues but instead to develop evidence demonstrating that the father could now safely care for the children. *See, e.g., Pineo v. State*, 2006 ME 119, ¶ 13, 908 A.2d 632 (explaining the deference afforded to "strategic and tactical decisions by defense counsel[, which] must be manifestly unreasonable" to establish ineffectiveness). And second, in the context of the mother's ineffectiveness claim, the court rejected the parents' expert's analysis. From this, it is apparent that, even if the *father's* attorney was obligated to present the expert's testimony at the termination hearing in order to argue that the father had not failed in his responsibility to protect Nathaniel from the

---

parent's expert's testimony would not have "changed the result" of the termination hearing, the court correctly described the prejudice standard, which required the parents to prove that any ineffectiveness did not produce a just result, and the court ultimately concluded that the termination hearing did in fact produce a "just result." *See In re Alexandria C.*, 2016 ME 182, ¶ 18, 152 A.3d 617; *Theriault v. State*, 2015 ME 137, ¶ 25, 125 A.3d 1163.

mother, that omission was not prejudicial because, as the court concluded, that evidence would not have called into question the reliability and justness of the judgment terminating parental rights.

The entry is:

Judgment affirmed.

---

Rory A. McNamara, Esq. (orally), Drake Law, LLC, Berwick, for appellant father

Heidi M. Pushard, Esq. (orally), Law Office of Heidi M. Pushard, Lewiston, for appellant mother

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Lewiston District Court docket number PC-2013-73
FOR CLERK REFERENCE ONLY