MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2019 ME 76
Docket:      Ken-18-384
Argued:      April 9, 2019
Decided:     May 21, 2019

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

IN RE CHILD OF REBECCA J.

PER CURIAM

[¶1]    Rebecca J. appeals from a judgment of the District Court (Waterville, *Stanfill, J.*) terminating her parental rights to her child pursuant to 22 M.R.S. § 4055(1)(A)(1)(a), (1)(B)(1) (2018).

[¶2]  In 2015, we prescribed a process by which a parent whose parental rights to a child were terminated following an evidentiary hearing could assert a claim of ineffective assistance of counsel, either on direct appeal or by filing a motion for relief from the termination judgment in the trial court pursuant to M.R. Civ. P. 60(b)(6).  *In re M.P.*, 2015 ME 138, ¶¶ 8, 11, 38, 126 A.3d 718.  Here, we are called upon to decide whether a parent has a right to the effective assistance of counsel in a proceeding where the parent *consents* to the termination of her parental rights, and, if so, whether the court abused its discretion in denying the mother's two motions for relief asserting ineffective assistance in this case.  *See In re Children of Jeremy A.*, 2018 ME 82, ¶ 21,

187 A.3d 602 (stating that "the trial court's ultimate denial of a Rule 60(b) motion" is reviewed for an abuse of discretion (quotation marks omitted)).

[¶3]  We hold that the mother had a right to the effective assistance of counsel at the proceeding where she consented to the termination of her parental rights and we conclude that the trial court did not abuse its discretion in finding that the mother received effective assistance when she voluntarily gave her consent in this case.  Accordingly, we affirm the judgment.

## I.  BACKGROUND

[¶4]  The relevant facts are procedural.  On March 30, 2016, the Department of Health and Human Services filed a petition for a child protection order and a request for a preliminary protection order concerning the child; a preliminary order was entered the same day (*Dow, J.*) granting custody of the child to the Department.  *See* 22 M.R.S. §§ 4032, 4034 (2018).  Counsel was appointed to represent the mother.  Following a contested summary preliminary hearing, *see* 22 M.R.S. § 4034(4), the court (*Stanfill, J.*) ordered continued custody with the Department.  In July 2016, the court (*Mathews, J.*) entered an order finding jeopardy as to the mother by agreement.  *See* 22 M.R.S. § 4035 (2018).

[¶5]  In December 2017, the Department petitioned to terminate the mother's parental rights.[1]  *See* 22 M.R.S. § 4052 (2018).  At a hearing held on August 20, 2018 (consent hearing), the mother, represented by the same counsel appointed more than two years earlier, advised the court (*Stanfill, J.*) that she had decided to consent to a termination of her parental rights.  The court asked the mother a series of questions to ensure that she was acting voluntarily and that she understood the rights that she was foregoing and the consequences of her decision; the court also inquired of the mother's counsel whether in counsel's opinion the mother was prepared to give an informed and voluntary consent.  *See* 22 M.R.S. § 4055(1)(B)(1).  Satisfied that the mother's decision was knowing and voluntary, and having witnessed the mother sign a written consent form, *see id.*; the court made a finding to that effect and ordered that the mother's parental rights be terminated.

[¶6]  Fifteen days later, acting pro se, the mother filed a letter in the trial court claiming that she was "pressured" by her attorney to consent to the termination.  She requested a new trial with new counsel.  The court appointed new counsel and set the matter for a hearing; counsel then filed a notice of appeal from the termination judgment, asserting that the mother's consent was

---

[1]  The father consented to a termination of his parental rights; he is not a party to this appeal.

4

involuntary and that she had received ineffective assistance of counsel in giving consent. On September 26, treating the mother's letter as a motion for a new trial pursuant to M.R. Civ. P. 59, the court held an evidentiary hearing (new trial hearing) at which the mother and her former attorney testified.

[¶7] The court subsequently entered a written order denying the mother's request to set aside her consent, finding that "at the time of the [consent hearing] this court found [the mother's] consent to be voluntary and knowing. Nothing in [the mother's] subsequent testimony—or that of [her former attorney]—undermines the court's confidence in that decision." The court further found that "[the mother] failed to prove that she received ineffective assistance of counsel when she voluntarily consented to the termination of her parental rights."

[¶8] In the interim between the new trial hearing and the court's decision, the mother moved us to allow the trial court to act on a M.R. Civ. P. 60(b)(6) motion for relief from the termination judgment, which she anticipated filing in accordance with our decision in *In re M.P.*, 2015 ME 138, ¶ 20, 126 A.3d 718 (stating that "[in] circumstances in which the record does not illuminate the basis for [an ineffective assistance claim] . . . the parent must *promptly* move for relief . . . pursuant to M.R. Civ. P. 60(b)(6)").

We granted leave for the trial court to act, and the mother filed a timely Rule 60(b)(6) motion soon after her Rule 59 motion was denied. That motion, accompanied by affidavits from the mother and her new counsel, asserted, inter alia, that her former counsel had failed to contact and have available at the consent hearing two witnesses who could have "at least cast doubt on" some of the Department's allegations. The mother asked the court to hold a new evidentiary hearing on her motion and to grant her relief from the termination judgment.

[¶9] In a written order entered December 13, 2018, the court declined to hold an additional evidentiary hearing and denied the motion on the existing record and the affidavits, noting that it had already found that "[former counsel's] performance was not deficient," and that the "current [m]otion . . . and incorporated affidavits do not add any facts that lead this court to a different legal conclusion pursuant to the *Strickland* doctrine."[2] The court found that

> [i]ndeed, [the mother] already testified at the [new trial] hearing that the lack of witnesses being present at the [consent hearing] *did not impact her decision* in consenting to the termination of her parental rights. Therefore, even assuming everything in the affidavits is true, it does not impact the finding already made that

---

[2] We assess claims of ineffective assistance of counsel in termination of parental rights cases using the standard announced by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *In re M.P.*, 2015 ME 138, ¶ 26, 126 A.3d 718.

6

[the mother's] consent [at the consent hearing] was done knowingly and voluntarily. Under these circumstances, there is no need to hold a second evidentiary hearing.

[¶10] The mother appealed from the denial of her Rule 60(b)(6) motion, and we ordered that the appeal be consolidated with her earlier appeal from the termination judgment. At oral argument, the mother stated that she is pressing only her assertion that the court erred by denying her request for a hearing on her Rule 60(b)(6) motion. Nonetheless, in the interest of completeness, we address the other contentions she raises in her brief, namely that the court erred by denying her Rule 59 motion for a new trial and by denying her Rule 60(b)(6) motion.

## II. DISCUSSION

A.     The Rule 59 Motion

1.     Voluntariness of Consent

[¶11] The mother contends that the court erred in denying her request to withdraw her consent and hold a new termination hearing, which the court treated as a motion for a new trial pursuant to M.R. Civ. P. 59,[3] because her

---

[3] Because the mother filed a notice of appeal after filing her pro se request, the trial court had no power to act on the request except in a circumstance enumerated in the applicable rule. M.R. App. P. 3(b), (c)(2). The State noted at the outset of the hearing on the mother's request that a motion for a new trial filed pursuant to M.R. Civ. P. 59 is such a circumstance; the court then proceeded to take evidence and issue a decision. M.R. App. P. 2B(c)(2)(C), 3(c)(2).

consent was involuntary. "We review the factual findings underlying a motion for new trial for clear error, and the court's ultimate disposition on the motion for an abuse of discretion." *Ma v. Bryan*, 2010 ME 55, ¶ 4, 997 A.2d 755.

[¶12] We discern no error or abuse of discretion on this record. Before it may terminate a parent's rights pursuant to 22 M.R.S. § 4055(1)(B)(1),[4] the District Court must find by clear and convincing evidence that the parent consented to the termination voluntarily and knowingly. *In re H.C.*, 2013 ME 97, ¶¶ 11-13, 82 A.3d 80. In order to make the required finding, "a court must, at minimum, (1) explain to the parent his or her parental rights and the effects of his or her decision thereon, (2) inquire into the parent's understanding of the effects of the decision, and (3) determine that the parent's decision is freely given." *Id.* ¶ 13.

[¶13] "[B]ecause a child's interest in the finality of [the termination] proceeding[] outweighs a parent's desire to revoke the consent in circumstances where the consent was knowingly and voluntarily executed," after a parent enters a valid consent to the termination of his or her parental rights, that consent "may be set aside only on the basis of fraud, duress, mistake,

---

[4] The statute provides that one alternative allowing a court to terminate parental rights is satisfied when "[t]he parent consents to the termination. Consent shall be written and voluntarily and knowingly executed in court before a judge. The judge shall explain the effects of a termination order[.]" 22 M.R.S. § 4055(1)(B)(1) (2018).

8

or incapacity." *Id.* (quotation marks omitted); *see also In re Amanda N.*, 1998 ME 115, ¶ 1, 710 A.2d 264 ("We conclude that the mother's knowing and voluntary consent to the termination is irrevocable absent a showing of fraud, duress, mistake, or incapacity . . . .").

[¶14]  All of the requirements for a valid consent were satisfied here. Before allowing the mother to execute a written consent form in open court, the presiding judge was advised by the mother that she wished to consent to termination.  The court then inquired of the mother personally as to whether she had been given enough time to consider her decision and whether she was consenting voluntarily "because you think it's the best thing to do."  The court next ensured that the mother understood her right to have a hearing on the Department's petition; that at the hearing the court would make the decision as to whether the Department had proved by clear and convincing evidence that her parental rights should be terminated; that the mother's decision was not the result of any promises concerning her future contact with the child; and that the result of her consent would be the loss of all legal rights concerning the child except for the child's right to inherit, *see* 22 M.R.S. § 4056(1) (2018), including the right to know anything about the child following termination.  The mother

answered all of those questions in a way that demonstrated her knowing and voluntary consent to termination.

[¶15]  At the conclusion of its colloquy with the mother, the court asked once again whether she had had enough time to make her decision and asked whether she had "any other questions . . . or concerns"; the mother said that she did not have any questions or concerns and reiterated that she was acting voluntarily.  The court then asked the mother's attorney whether in her opinion the mother was acting voluntarily; counsel agreed that she was and stated that the mother had been "fully informed" of the consequences of her decision.  Only then did the court allow the mother to sign a written consent form and order that her parental rights be terminated.  The court's careful actions fully complied with the requirements for accepting a knowing and voluntary consent that we articulated in *In re H.C.*, 2013 ME 97, ¶ 13, 82 A.3d 80.

[¶16]  Of the reasons that may justify setting aside a valid consent to termination, the mother advances two, asserting that she was "pressured" by her attorney and thus acted under duress and that counsel failed to "assess and investigate" her mental health and intellectual capacity.  *See id.* (stating that a voluntary and knowing consent may be set aside for "fraud, duress, mistake, or incapacity").  Neither argument is persuasive.

[¶17]   Nothing about the cordial, respectful, and unrushed consent hearing suggests that the mother was coerced or otherwise compelled to act by anything other than the circumstances in which she found herself— circumstances that were the result of her own actions and behavior. *Cf. City of Portland v. Gemini Concerts, Inc.*, 481 A.2d 180, 183 (Me. 1984) (discussing "wrongful acts or threats which subvert the will" as forms of duress); *see generally Duress*, Black's Law Dictionary (10th ed. 2014).   At the new trial hearing, the attorney who had represented the mother at the consent hearing testified that there were ongoing child protection proceedings concerning both of the mother's other children; that she had advised the mother she would likely lose a contested termination hearing that day given the anticipated evidence of her poor reunification efforts; and that an involuntary termination judgment following a contested hearing would be harmful to her cause in subsequent child protection proceedings concerning the other children.   The court ultimately found that "[the mother] was clearly in a difficult position between the Scylla and Charybdis, a situation in which the choices were all repugnant to her.  She made a voluntary choice, and although she may regret it, there is no basis to set it aside."

[¶18]  Nor was there any suggestion from any party or the court, after its extended colloquy with the mother at the consent hearing, that the mother lacked the capacity to understand or appreciate what was occurring.  To the contrary, when the court asked the mother at the new trial hearing, "Just to be clear, on the day of the consents . . . you knew what you were signing, that there were consents to terminate your parental rights?" the mother answered, "Yes . . . yeah."[5]  On this record, the court's finding that "[the mother] fully understood what she was doing" is not clearly erroneous.  *See Ma*, 2010 ME 55, ¶ 4, 997 A.2d 755.

2.    Ineffective Assistance

(a)  The Mother's Right to Effective Counsel

[¶19]  Before reaching the merits of the mother's contention that she received ineffective assistance of counsel at the consent hearing, we first address a preliminary question—whether the mother had a right to effective assistance in a proceeding where there was no trial because she consented to a termination of her parental rights.  The mother asserts that she did and the Department agrees.

---

[5]  The mother signed two consents to termination at the consent hearing, the one at issue in this appeal and a conditional consent concerning another child; that consent was later vacated when the condition precedent was not fulfilled.

[¶20]   We also agree that the mother had a right to the effective assistance of counsel in making the decision to voluntarily consent to termination, as would unquestionably have been the case had she elected to proceed to a contested hearing.  *See In re Child of Nicholas G.*, 2019 ME 13, ¶ 16, 200 A.3d 783 ("An indigent parent has a due process right . . . to appointed counsel in a child protection proceeding."); *In re M.P.*, 2015 ME 138, ¶ 38, 126 A.3d 718 (setting out the process by which a parent may assert a claim of ineffective assistance of counsel in an appeal from a judgment terminating parental rights).  The same "fundamental liberty interest"—the mother's right "to make decisions concerning the care, custody, and control of her child[]," *In re Children of Bethmarie R.*, 2018 ME 96, ¶ 23, 189 A.3d 252 (alteration and quotation marks omitted)—was at stake at the time she was required to decide, with the advice of counsel, what course of action to take.  Effective counsel was no less necessary simply because the mother decided to consent rather than put the Department to its proof.

[¶21]   Furthermore, the Legislature has provided that "[p]arents . . . are entitled to legal counsel in child protection proceedings," 22 M.R.S. § 4005(2) (2018), and we held in another context involving the potential deprivation of liberty that "where a state statute affords an individual . . . the right to counsel,

the legislature could not have intended that counsel could be prejudicially ineffective." *In re Henry B.*, 2017 ME 72, ¶ 6, 159 A.3d 824 (quotation marks omitted). The same rationale applies in this case.

(b) Effectiveness of Counsel at the Consent Hearing

[¶22] We now turn to the mother's contention that she must be allowed to withdraw her consent because her counsel was constitutionally ineffective at the consent hearing. The court emphatically found to the contrary following the evidentiary new trial hearing: "Here, not only was [counsel's] performance not deficient, the advice she provided to her client and the time she took to explain the different courses of action and their consequences was very appropriate, exceeding that which might be seen with the ordinary fallible attorney."

[¶23] We recently restated the mother's burden on appeal:

A parent alleging ineffective assistance of counsel in a child protection case has the burden to show that (1) counsel's performance was deficient, i.e., that there has been serious incompetency, inefficiency, or inattention of counsel amounting to performance below what might be expected from an ordinary fallible attorney; and (2) the deficient performance prejudiced the parent's interests at stake in the termination proceeding to the extent that the trial cannot be relied on as having produced a just result. When considering the issue of prejudice, the court must determine if there is a reasonable probability that the ineffectiveness resulted in a different outcome—meaning, whether ineffective assistance of counsel rose to the level of compromising

the reliability of the judgment and undermining confidence in it. Because the [mother] had the burden of proof at the motion hearing to prove ineffectiveness, [she] must demonstrate here that the evidence compelled a contrary outcome.

*In re Children of Jeremy A.*, 2018 ME 82, ¶ 21, 187 A.3d 602 (alterations, citations, and quotation marks omitted); *see In re Alexandria C.*, 2016 ME 182, ¶¶ 18-19, 152 A.3d 617.

[¶24] The trial court did not err by concluding that the mother failed to meet her burden to show that her counsel at the consent hearing was deficient; therefore, we need not reach the prejudice prong of the ineffective assistance analysis. The mother's former counsel testified at the new trial hearing that she began her "[a]miable . . . very friendly" representation of the mother in 2016. The mother gave counsel no reason to be concerned about her competency and gave every indication that she understood the issues involved and her attorney's advice. She stayed in contact with counsel and provided all of the information that counsel requested. Counsel never saw the mother impaired and said that the mother spoke using a normal vocabulary.

[¶25] In "multiple conversations" over several months, the mother consistently said that she wanted to contest termination at a hearing. On the day of the hearing, the mother instead decided to consent after receiving counsel's detailed advice concerning the state of the evidence, the likelihood of

success, and the potential effect of an involuntary termination judgment on pending child protection cases involving her other children. *See supra* ¶ 20.

[¶26]   The mother testified that preceding her consent she had a discussion with her attorney that lasted about forty-five minutes, during which counsel explained her options to her.  She said that she wrote to the court a few days later asking to withdraw her consent after talking to a friend who recommended that she do so.  She told the court that she felt that she had a choice at the consent hearing, albeit one that she felt "pressured" to make.

[¶27]   Relevant to the mother's contention in the trial court, and on appeal, that she was prejudiced by her former attorney's failure to have available two witnesses whom she had identified, when her attorney asked her at the new trial hearing, "Did that have any impact on your decision?" the mother answered, "No."   Therefore, even if we were to reach the issue of prejudice, the evidence did not compel the court to conclude that the mother established this element of an ineffective assistance claim.

[¶28]  It is well established that "the court, as fact-finder and sole arbiter of witness credibility, was free to selectively accept or reject" the testimony offered by the mother and her former attorney.  *Amero v. Amero*, 2016 ME 150, ¶ 13, 149 A.3d 535 (quotation marks omitted).  On this record, the court did not

clearly err in finding that the mother voluntarily consented to a termination of her parental rights after her attorney provided advice "exceeding that which might be seen with the ordinary fallible attorney." *See In re Alexandria C.*, 2016 ME 182, ¶ 19, 152 A.3d 617 ("We review the factual findings underlying ineffectiveness claims for clear error.").

B.     The Rule 60(b) Motion

[¶29]   The mother's motion for relief from the termination judgment, filed pursuant to M.R. Civ. P. 60(b)(6) in accordance with our guidance in *In re M.P.*, 2015 ME 138, ¶ 20, 126 A.3d 718, similarly asserted ineffective assistance of counsel based on (1) her former attorney's failure to produce two specified witnesses at the consent hearing, and (2) her involuntary consent.  As required by *In re M.P.*, the motion was supported by affidavits, one executed by the mother and the other by her new counsel.  2015 ME 138, ¶ 21, 126 A.3d 718. Counsel's affidavit stated that he had contacted the two witnesses by phone, that the witnesses gave at best vague information, and that neither witness would voluntarily participate in any court proceeding or sign an affidavit.

[¶30]   The court declined to hold a new evidentiary hearing and denied the motion by written order, noting that it had already found in its decision on the Rule 59 motion that former counsel's performance was not deficient, and

finding that "[the mother's] current Motion for Relief from Judgment and incorporated affidavits do not add any facts that lead this court to a different legal conclusion pursuant to the *Strickland* doctrine." The court took special note of the mother's testimony at the new trial hearing "that the lack of witnesses being present at the [consent hearing] *did not impact her decision* in consenting to the termination of her parental rights."

[¶31] We discern no abuse of discretion in the court's determination that "[u]nder these circumstances, there is no need to hold a second evidentiary hearing," or in its decision to deny the Rule 60(b)(6) motion for relief. *See In re Children of Jeremy A.*, 2018 ME 82, ¶ 21, 187 A.3d 602 ("[W]e review for an abuse of discretion the trial court's ultimate denial of a Rule 60(b) motion." (quotation marks omitted)). We have said that

> when a parent promptly moves for relief from judgment pursuant to M.R. Civ. P. 60(b)(6) based on ineffective assistance of counsel, it is for the trial court to determine what process is necessary to meaningfully assess a parent's claim while balancing the State's important interest in expeditiously establishing permanent plans for children. Such a determination will necessarily call upon a trial court to tailor the process to the facts and circumstances of each case.

*In re M.P.*, 2015 ME 138, ¶ 36, 126 A.3d 718 (citation omitted). In making that assessment, "a court is not required to hold an evidentiary hearing, even when

a party asserts that such a hearing is necessary, to receive evidence in support of a Rule 60(b) motion." *In re David H.*, 2009 ME 131, ¶ 34, 985 A.2d 490.

[¶32]  Here, the court had already heard the testimony of the mother and her former attorney at the prior evidentiary hearing concerning the mother's claim that her consent was involuntary, and had heard the mother testify that the absence of the two witnesses she identified in her Rule 60(b)(6) motion had no effect on her decision to consent to termination.  Nothing in the affidavits filed with the Rule 60(b)(6) motion had any material effect on the evidence the court had previously received.  *See In re Alexandria C.*, 2016 ME 182, ¶ 16, 152 A.3d 617 ("When a parent pursues a claim of ineffective assistance by means of a Rule 60(b)(6) motion, the parent's affidavit and any accompanying affidavits must . . . demonstrate that there was admissible, material, and noncumulative evidence that counsel was aware of and did not offer to the trial court, or that the parent's counsel was deficient for some other very substantial reason.").  For that reason, "[t]he court did not err in considering and deciding the [mother's] Rule 60(b) motion[] . . . based on affidavits presenting [her] best case." *In re David H.*, 2009 ME 131, ¶ 34, 985 A.2d 490.

The entry is:

Judgment affirmed.

Julian Richter, Esq. (orally), Richter Law, LLC, Gardiner, for appellant mother

Aaron M. Frey, Attorney General, Meghan Szylvian, Asst. Atty. Gen., and Hunter C. Umphrey, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Waterville District Court docket number PC-2016-20
FOR CLERK REFERENCE ONLY