MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2020 ME 64
Docket:       Ken-19-464
Submitted
  On Briefs:  May 4, 2020
Decided:      May 12, 2020

Panel:        MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

## IN RE CHILD OF RONALD P.

PER CURIAM

[¶1]  Ronald P. appeals from a judgment of the District Court (Augusta, *Montgomery, J.*) terminating his parental rights to his child.[1]  *See* 22 M.R.S. § 4055(1)(A)(1)(a), (B)(1) (2020).  The father argues that the court erred in finding that he voluntarily and knowingly consented to the termination of his parental rights.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  The Department of Health and Human Services filed a petition for a child protection order regarding the child on July 3, 2018, alleging that the father was unable to manage his substance abuse issues and that he had failed to follow safety plans previously established by the Department.  *See* 22 M.R.S.

---

[1]  Although the Department of Health and Human Services filed a petition to terminate the parental rights of both the mother and the father, the court (*E. Walker, J.*) held a separate termination hearing for the mother that occurred after the father filed this appeal.  We therefore limit our discussion to the facts and procedural events that are relevant to the father.

§ 4032 (2020). On that same day, the court (*Nale, J.*) entered an order of preliminary protection and placed the child in the custody of the Department. *See* 22 M.R.S. § 4034 (2020). The father later waived his opportunity for a summary preliminary hearing, and, on October 3, 2018, the court (*Montgomery, J.*) entered a jeopardy order with the father's agreement. *See* 22 M.R.S. § 4035 (2020). Jeopardy was based on the father's inability to manage his substance abuse issues and his unwillingness to recognize how these issues negatively affected the health and welfare of the child. The court (*E. Walker, J.*) entered a judicial review and permanency planning order, with the father's consent, on February 28, 2019.[2]

[¶3] On May 8, 2019, the Department filed a petition to terminate the father's parental rights, alleging that the father had "made minimal progress in reunification" with the child, missed several drug treatment appointments scheduled by the Department, and had made "no effort" to stay in contact with the Department. *See* 22 M.R.S. § 4052 (2020). At the termination hearing on October 8, 2019, the father informed the court (*Montgomery, J.*) that he intended to consent to the termination. The court then conducted an extended colloquy with the father, informing him of his right to a termination

---

[2] The court (*E. Walker, J.*) entered a second judicial review and permanency planning order on July 25, 2019, also with the father's consent.

hearing and the effects of an order terminating his parental rights. The court then ensured that the father had a "full opportunity" to discuss his decision with his attorney and inquired as to whether the father's consent was voluntary. The father confirmed to the court that he understood the effects of consenting to the termination of his parental rights, had no further questions for his attorney, and was not pressured to waive his right to a hearing.

[¶4] The court also asked the father about his state of mind at the hearing, as evidenced by the following exchange:

> THE COURT: And do you believe that you're emotionally and mentally competent to make the decision today?
>
> FATHER: That's what's best for him at the moment, yeah.
>
> THE COURT: Okay. Are you under the influence of any drugs or alcohol that would interfere with your ability to make this decision?
>
> FATHER: No.

The father's attorney also confirmed to the court that, in his discussions with the father, he found the father to be both "lucid and understanding." In response to further inquiry by the court, the father again confirmed that he did not need additional time to speak with his family members or his attorney and acknowledged that he had all of the information he needed in order to consent to the termination of his parental rights.

[¶5]  Following its discussion with the father at the hearing, the court found that the father's consent was "knowing and voluntary."  The father then signed the consent form, and the court entered an order terminating the father's parental rights.  The father now appeals.  *See* 22 M.R.S. § 4006 (2020); M.R. App. P. 2B(c)(1), (d)(1).[3]

## II.  DISCUSSION

[¶6]  The father contends that the court erred in finding that he voluntarily and knowingly consented to the termination of his parental rights, arguing that the court failed to ask sufficient questions regarding his understanding of the effects of his consent and his motivation for consenting. He further argues that the court erred by failing to inquire about his capacity to consent because he was "potentially unable" to appreciate the nature of the termination proceedings as a result of his drug use.

[¶7]  We review for clear error a court's finding that a parent voluntarily and knowingly consented to an order terminating parental rights. *See In re H.C.*, 2013 ME 97, ¶ 11, 82 A.3d 80.  Accordingly, we will "affirm a judgment terminating parental rights if a review of the record demonstrates, inter alia, that the trial court rationally could have found clear and convincing

---

[3]  Pursuant to M.R. App. P. 2B(d)(1), the court (*Nale, J.*) extended the time for the father to file his notice of appeal.

evidence in that record to support the necessary factual findings as to the basis for termination provided in 22 M.R.S. § 4055(1)(B)(1)." *Id.* When, as here, a parent does not move for further findings of fact or conclusions of law in a post-judgment motion, *see* M.R. Civ. P. 52, "we assume that the court found all the facts necessary to support its judgment to the extent those facts are supported in the record." *In re H.C.*, 2013 ME 97, ¶ 10, 82 A.3d 80.

[¶8] To order the termination of parental rights pursuant to section 4055(1)(B)(1), the court must find, by clear and convincing evidence, that a parent voluntarily and knowingly consented to the termination. *See* 22 M.R.S. § 4055(1)(B)(1); *In re H.C.*, 2013 ME 97, ¶ 11, 82 A.3d 80. "In order to make [this] required finding, a court must, at minimum, (1) explain to the parent his or her parental rights and the effects of his or her decision thereon, (2) inquire into the parent's understanding of the effects of the decision, and (3) determine that the parent's decision is freely given." *In re Child of Rebecca J.*, 2019 ME 76, ¶ 12, 208 A.3d 405 (quotation marks omitted); *see* 22 M.R.S. § 4055(1)(B)(1) (requiring that the court "explain the effects of a termination order" to the parent). Additionally, a parent's consent must be "written and . . . executed in court before a judge." 22 M.R.S. § 4055(1)(B)(1).

[¶9]  "[A]fter a parent enters a valid consent to the termination of his or her parental rights, that consent may be set aside only on the basis of fraud, duress, mistake, or incapacity." *In re Child of Rebecca J.*, 2019 ME 76, ¶ 13, 208 A.3d 405 (quotation marks omitted).  "To prevail on a claim of incapacity, the asserting party must prove that he was unable to reasonably understand the nature and consequences of the consent." *In re H.C.*, 2013 ME 97, ¶ 16, 82 A.3d 80; *see In re Child of Sherri Y.*, 2019 ME 162, ¶ 15, 221 A.3d 120 ("The incapacity inquiry focuses . . . on a parent's ability to grasp the consequences of the present proceeding.").  Further, where "there has been no previous adjudication of incompetency, a court may inquire into whether a party's act was a departure from the normal pattern of similar transactions." *In re H.C.*, 2013 ME 97, ¶ 16, 82 A.3d 80.

[¶10]  Here, we are persuaded that the court rationally could have found, by clear and convincing evidence, that the father's consent at the termination hearing was both knowing and voluntary.  *See* 22 M.R.S. § 4055(1)(B)(1); *In re H.C.*, 2013 ME 97, ¶¶ 11, 13, 82 A.3d 80.  The record demonstrates that the court explained to the father that he was "giving up the right to a trial," and informed him of the effects of consenting to the termination of his parental rights.  The father confirmed that he understood

the effects of consenting and represented to the court that he did not have any further questions about the proceeding for either his family members or his attorney. The father also assured the court that he was not pressured into consenting and that, at that time, he was not under the influence of alcohol or drugs. It was only after this extended colloquy that the father signed the form consenting to the termination of his parental rights. As such, the court did not clearly err in finding that the father knowingly and voluntarily consented to the termination of his parental rights. *See In re Child of Rebecca J.*, 2019 ME 76, ¶¶ 14-15, 208 A.3d 405.

[¶11] Further, contrary to the father's contention that he lacked the capacity to consent, the record shows that the father answered all of the questions posed by the court and confirmed that he was not under the influence of any drugs or alcohol at the hearing. Additionally, like in *In re H.C.*, the father's substance abuse issues "were disclosed to the court throughout the child protection process, and [his] consent was not a departure from prior related decisions" in the proceedings, including his waiver of the right to a summary preliminary hearing, his agreement to the entry of a jeopardy order, and his agreement to the judicial review orders. 2013 ME 97, ¶ 16, 82 A.3d 80. The father has not demonstrated on appeal that he was unable "to grasp

the consequences of the [termination] proceeding," *In re Child of Sherri Y.*, 2019 ME 162, ¶ 15, 221 A.3d 120, or was otherwise "unable to reasonably understand the nature and consequences of [his] consent," *In re H.C.*, 2013 ME 97, ¶ 16, 82 A.3d 80.

The entry is:

> Judgment affirmed.

---

Kristina Dougherty, Esq., Chester & Vestal, P.A., Portland, for appellant Father

Aaron M. Frey, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Augusta District Court docket number PC-2018-41
FOR CLERK REFERENCE ONLY