MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2020 ME 80
Docket:      Ken-19-517
Submitted
  On Briefs:  May 28, 2020
Decided:     June 4, 2020

Panel:       GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

IN RE CHILDREN OF BRANDON D.

PER CURIAM

[¶1]  Brandon D. and the mother appeal from separate judgments entered by the District Court (Augusta, *Nale, J.*) terminating their parental rights to the children.  The mother, whose parental rights were terminated pursuant to 22 M.R.S § 4055(1)(A)(1)(a) and (B)(1) (2020), argues that the court erred in finding that her consent to the termination was made knowingly and voluntarily.  The father, whose parental rights were terminated pursuant to 22 M.R.S. § 4055(1)(B)(2)(a) and (b)(i)-(ii) (2020), argues that there is insufficient evidence in the record to support the court's findings of at least one ground of parental unfitness and that termination was in the best interests of the children.  We affirm the judgments.

## I.  BACKGROUND

[¶2]  On April 25, 2018, the Department of Health and Human Services filed a petition for a child protection order regarding the older child, alleging

that the parents were unable to manage their substance abuse issues and that, as a result, the child was exposed to unsafe conditions and neglect.[1] *See* 22 M.R.S. § 4032 (2020). At the time the petition was filed, the father was incarcerated. Two days later, the court (*Fowle, J.*) entered an order of preliminary protection and placed the child in the custody of the Department. *See* 22 M.R.S. § 4034 (2020). The parents later waived their opportunity for a summary preliminary hearing, after which the court (*Nale, J.*) entered an order maintaining the Department's custody of the child and placing the child with the child's paternal step-grandmother.

[¶3] Following the birth of the younger child, the Department filed a petition for a child protection order for that child on May 23, 2018. On the same day, the court (*E. Walker, J.*) entered an order of preliminary protection. After the parents again waived their opportunity for a summary preliminary hearing, the court (*Nale, J.*) placed the younger child with the paternal step-grandmother and maintained the Department's custody of the child. On August 16, 2018, the court entered a jeopardy order as to both children with the agreement of the parents. *See* 22 M.R.S. § 4035 (2020). The jeopardy order conditionally placed

---

[1] Additionally, the petition sought to protect the child from the maternal grandmother who, at that time, was the child's legal guardian.

the older child with the maternal grandmother and maintained placement of the younger child with the paternal step-grandmother.

[¶4]  In March 2019, the father was released from prison.  On March 25, 2019, he signed a rehabilitation and reunification plan, agreeing to attend the children's medical appointments, secure and maintain an appropriate home for the children and himself, and complete a substance abuse evaluation.

[¶5]  On May 21, 2019, the Department filed a petition to terminate the parental rights of the mother and the father.  *See* 22 M.R.S. § 4052 (2020).  The Department alleged that the mother continued to struggle with substance abuse issues and was unable to secure an appropriate home for the children, and that father had "just begun to address his longstanding substance abuse issues."  In August 2019, the mother and father were involved in a domestic dispute, which resulted in the father being incarcerated for assaulting the mother.  The father was released from jail in October 2019.

[¶6]  The court held a hearing on the termination petition on November 14, 2019.  At the beginning of the hearing, the mother informed the court that she planned to consent to the termination of her parental rights "under advice from my counsel."  The court asked the mother if she "personally . . . intended[ed] to terminate [her] parental rights in this matter."  The mother

4

replied: "If it's going to help my kids be adopted by [the] Grandmother, then yeah."

[¶7] The court then informed the mother that she would be waiving her right to a trial if she consented, and it explained the effects of a termination order. The mother stated that she understood. The mother also assured the court that she was not under the influence of any alcohol or drugs, had the opportunity to discuss her consent with her attorney, and was not pressured or threatened to consent. The court then had the following exchange with the mother:

> THE COURT: You understand that there's no guarantee—listen very carefully, there's no guarantee that the children will be placed where they are now or that the permanency plan, adoption or whatever, will go forward? Something could happen in the future to stop it and you cannot object to that plan. Do you understand that?
>
> MOTHER: I do, yeah.

The court continued its colloquy with the mother, again informing her of the prospective effects of consenting to the termination of her parental rights. After the mother confirmed to the court that it was her intent to consent to the

termination, the mother signed the consent form and the court terminated her parental rights.[2] *See* 22 M.R.S. § 4055(1)(B)(1).

[¶8] Following the mother's consent to termination, the court held a contested hearing regarding the termination of the father's parental rights. The court concluded that the father has been "unable to take responsibility for the children within a time which is reasonably calculated to meet the needs of the children," finding that the father had failed to take part in substance abuse counseling and had not found "safe housing" for himself and the children. The court also found that the children are "being well cared for" in their current placements and that the time that the father needs "to heal . . . [and] to move forward is inconsistent with the time that [the] children need."

[¶9] By judgment entered on December 23, 2019, the court made the following additional findings of fact, all of which are supported by competent evidence in the record. *See In re Child of Corey B.*, 2020 ME 3, ¶ 3, 223 A.3d 462.

> [T]he Department has made reasonable efforts to rehabilitate and reunify the family and has made reasonable efforts to identify and pursue an alternative permanency plan. The Department caseworker has made numerous efforts to engage the father in reunification services . . . documented in the two signed reunification plans. [T]he Department caseworker held at least two Family Team Meetings and twice traveled to [a correctional facility] to visit the father while he was incarcerated. [T]he

---

[2] The court entered an order terminating the mother's parental rights on December 23, 2019.

Department caseworker has [made] efforts to refer the father for a substance abuse evaluation. To date, this evaluation has not taken place. . . . The expectations for the father were clearly outlined in the reunification plan from March, 25, 2019, which was completed after the father was released from incarceration. As part of the plan, the father was required to . . . participate in a substance abuse evaluation, and participate in the Department's drug testing line.

. . . .

The Court finds that the father . . . was aware of why the children were removed from the parents. The father agreed to a jeopardy order on August [16], 2018, which expressly stated the issues placing the children in circumstances of jeopardy. . . . The father has not complied with the services in the reunification plan dated March 25, 2019. [The father] agreed to find safe housing for himself and his children as part of the reunification plan. The Court believes that [the father] is searching for housing but finds that the father did not exhibit fervor or urgency in doing so. [The father] spent several months after his release from incarceration living with his brother in a living situation that was not appropriate for children. [The father] recognized this fact but continued to make minimal efforts to obtain adequate housing. As of the time of hearing, [the father] had still not obtained adequate housing for his children. [The father] has not participated in the Department's drug testing line and has not obtained a substance abuse evaluation as agreed to in the reunification plan. Additionally, [the father] has only attended approximately two of [the younger child's] medical appointments. . . . This is despite [the younger child's] numerous appointments.

Additionally, the father was involved in a domestically violent physical altercation with the mother in August 2019 which left the mother injured. As a direct result of his actions, [the father] was incarcerated for approximately one month between September 2019 and October 2019. The father's issues for violence [have] not been addressed and he cannot even identify what caused the argument between himself and the mother in the

August 2019 incident. [The father] has just started the . . . batterer's intervention program and has forty-four weeks left to complete this program. During that month that the father was incarcerated again, visits with both children were interrupted and [the father] was not able to attend his regular medication assisted treatment. . . . [The father] never requested increased visits with the children throughout the lifetime of this case. . . . [T]he father was provided ample time in this case to complete the services that was asked of him by the Department. This did not happen despite the clear Rehabilitation and Reunification plan which specified the services that the father needed to participate in to alleviate jeopardy.

. . . .

. . . . In this case, despite the reasonable efforts of the Department, the father did not rectify or resolve[] the problems that prevented the return of the child[ren] to the home and made minimal efforts to engage in services in accordance with the rehabilitation and reunification plan.

. . . .

. . . . Both children are in safe and nurturing placements. The [younger child] remains in the only home he has ever known. . . . [The older child] has remained with the maternal grandmother for over a year since the pendency of this case.

[¶10]  Based on these findings, the court terminated the father's parental rights, concluding that the father is unable to protect the children from jeopardy and has been unable to take responsibility for the children within a time that is reasonably calculated to meet the children's needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii).  The court also concluded that termination of the

8

father's parental rights is in the best interests of the children. *See* 22 M.R.S. § 4055(1)(B)(2)(a).

[¶11] Both parents timely appealed. *See* 22 M.R.S. § 4006 (2020); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

### A. The Mother's Consent

[¶12] The mother contends that the court erred in finding that she voluntarily and knowingly consented to the termination of her parental rights, arguing that the court did not ask about her motivations for consenting or whether she had been given "sufficient time" to consider her consent and discuss it with her attorney. We review for clear error a court's finding that a parent voluntarily and knowingly consented to an order terminating parental rights. *See In re H.C.*, 2013 ME 97, ¶ 11, 82 A.3d 80.

[¶13] "Before it may terminate a parent's rights pursuant to 22 M.R.S. § 4055(1)(B)(1), the District Court must find by clear and convincing evidence that the parent consented to the termination voluntarily and knowingly." *In re Child of Rebecca J.*, 2019 ME 76, ¶ 12, 208 A.3d 405. To make this required finding, "a court must, at minimum, (1) explain to the parent his or her parental rights and the effects of his or her decision thereon, (2) inquire into the parent's

understanding of the effects of the decision, and (3) determine that the parent's decision is freely given." *Id.* (quotation marks omitted); *see* 22 M.R.S. § 4055(1)(B)(1). Section 4055 also requires that a parent's consent be "written and . . . executed in court before a judge." 22 M.R.S. § 4055(1)(B)(1).

[¶14] In this case, the mother initially appeared to condition her consent upon her children "be[ing] adopted by [the] grandmother." After the mother's response, however, the court informed the mother of her right to a trial, explained the effects of a termination order, and confirmed that the mother had previously had an opportunity to discuss her consent with her attorney.[3] Further, the mother, after questioning by the court, informed the court that she understood that there was "no guarantee that the children will be placed where they are now" if she consented, and that she would be unable to object to any future permanency plan.

[¶15] Therefore, based on the court's colloquy with the mother, we discern no error in the court's finding that the mother knowingly and voluntarily consented to the termination of her parental rights. *See In re Child of Rebecca J.*, 2019 ME 76, ¶¶ 14-15, 208 A.3d 405.

---

[3] The mother's attorney also represented to the court that she had "reviewed the [consent] form" with the mother and "had read through the language in the form with her."

B.      Termination of Father's Parental Rights

[¶16]  The father argues that there is insufficient evidence in the record to support the court's findings of at least one ground of parental unfitness and that termination was in the best interests of the children, arguing that he has shown progress in alleviating jeopardy and reunifying with the children.

[¶17]  To terminate the father's parental rights without his consent, "the trial court was required to find, by clear and convincing evidence, at least one ground of parental unfitness and that termination is in the best interest[s] of the child[ren]." *In re Child of Amber D.*, 2020 ME 30, ¶ 6, --- A.3d ---; *see* 22 M.R.S. § 4055(1)(B)(2).  "We review the court's factual findings for clear error and review the court's ultimate conclusion that termination of parental rights is in the best interest of [each] child for an abuse of discretion." *In re Child of Megan D.*, 2019 ME 52, ¶ 6, 206 A.3d 899.

[¶18]  Contrary to the father's contention, there is competent evidence in the record supporting the court's findings of parental unfitness.  *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii).   Although the father was incarcerated at the beginning of the child protection proceedings, the father agreed, upon his release, to a rehabilitation and reunification plan that required him to complete a substance abuse evaluation, attend his children's medical appointments, and

secure an appropriate home for himself and the children. The court found, however, that the father had failed to complete a substance abuse evaluation and he was unable to secure "adequate housing" for himself, and these findings were supported by testimony from a Department caseworker and the father himself. The court also found that the father was unfamiliar with the children's medical care providers and had attended only two of the younger child's medical appointments since March 2019. Because the court's findings are supported by the record, the court did not err in finding that the father is unable to protect the children from jeopardy and has been unable to take responsibility for the children within a time which is reasonably calculated to meet their needs. *See id.* § 4055(1)(B)(2)(b)(i)-(ii); *In re Children of Anthony M.*, 2018 ME 146, ¶ 11, 195 A.3d 1229 ("Marginal progress toward reunification and a simple desire to remain [a] parent[] is not enough to ameliorate jeopardy . . . ." (quotation marks omitted)).

[¶19] Further, we discern no abuse of discretion in the court's conclusion that termination of the father's parental rights was in the best interests of the children. "[A] court determines a child's best interest by considering factors including the needs of the child, the child's age, attachment to relevant persons, periods of attachment and separation, ability to integrate into substitute

placement or back into [the] parent's home, and the child's physical and emotional needs." *In re Child of Sherri Y.*, 2019 ME 162, ¶ 8, 221 A.3d 120 (quotation marks omitted); *see* 22 M.R.S. § 4055(2) (2020). "Also relevant to the best interests determination is the harm the children may suffer if the parent's rights are not terminated, as well as the children's need for permanence and stability." *In re Children of Christopher S.*, 2019 ME 31, ¶ 8, 203 A.3d 808 (quotation marks omitted). Here, the record demonstrates that, although the children are being "well cared for" in their current placements, the father is unable to meet their current needs. *See id.* ("[E]ven though parental unfitness and a child's best interest are separate elements of a termination case, the court's *findings* that bear on parental unfitness may also be relevant to the question of whether termination is in the child's best interest.").

[¶20] Therefore, the court did not clearly err or abuse its discretion in finding at least one ground of parental unfitness and that termination was in the best interests of the children. *See In re Child of Megan D.*, 2019 ME 52, ¶ 8, 206 A.3d 899.

The entry is:

Judgment affirmed.

Andrew Wright, Esq., Brunswick, for appellant father

David Paris, Esq., Bath, for appellant mother

Aaron M. Frey, Attorney General, and Zack Paakkonen, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Augusta District Court docket numbers PC-2018-25 and PC-2018-28
FOR CLERK REFERENCE ONLY